NO. 16-1161

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

---

KENNETH GRAHAM, on behalf of himself and all
others similarly situated

PLAINTIFF-APPELLANT

v.

CATAMARAN HEALTH SOLUTIONS LLC, *et al.*

DEFENDANTS-APPELLEES

---

On Appeal from the
United States District Court for the Eastern District of Arkansas
Western Division
No. 4:14-CV-00589-BRW

The Honorable Billy Roy Wilson
Presiding Judge

---

## JOINT BRIEF OF APPELLEES

---

Appellate Case: 16-1161     Page: 1     Date Filed: 03/31/2016 Entry ID: 4384037

Submitted by:

James M. Simpson
Martin A. Kasten
FRIDAY, ELDRIDGE & CLARK, LLP
400 West Capitol Avenue
Suite 2000
Little Rock, Arkansas 72201-3522
(501) 376-2011
simpson@fridayfirm.com
mkasten@fridayfirm.com

Paul L. Langer
QUARLES & BRADY LLP
300 N. LaSalle Street
Suite 4000
Chicago, Illinois 60654
(312) 715-5121
paul.langer@quarles.com

Patrick J. Murphy
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Suite 2400
Milwaukee, Wisconsin 53202
(414) 277-5459
patrick.murphy@quarles.com

*Attorneys for Defendant-Appellee
Catamaran Health Solutions, LLC,
successor by merger to Defendant
Catalyst Health Solutions, Inc.
f/k/a Defendant HealthExtras, Inc.*

Robert L. Jones III
Kerri E. Kobbeman
Amber J. Prince
CONNER & WINTERS, LLP
4375 N. Vantage Drive
Suite 405
Fayetteville, Arkansas 72703
(479) 587-3421
bjones@cwlaw.com
kkobbeman@cwlaw.com
aprince@cwlaw.com

Harvey Kurzweil
Kelly A. Librera
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166-4193
(212) 294-6700
hkurzweil@winston.com
klibrera@winston.com

Neal R. Marder
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, California 90071-1543
(213) 615-1700
nmarder@winston.com

*Attorneys for Defendant-Appellee
Virginia Surety Company, Inc.*

ii

-and-

Edwin L. Lowther, Jr.
Gary D. Marts, Jr.
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
elowther@wlj.com
gmarts@wlj.com

J. David Brown
Tom Van Arsdel
Stephen R. Clarke
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400
dbrown@winstead.com
tvanarsdel@winstead.com
sclarke@winstead.com

*Attorneys for Defendant-Appellee*
*Stonebridge Life Insurance Company*

iii

# SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Plaintiff-Appellant Kenneth Graham ("Graham") seeks to overturn the District Court's dismissal of the First Amended Class Action Complaint, which alleged that certain insurance policies covering Graham and a putative class of members enrolled in a supplemental benefits program were void under Arkansas law. This Court should affirm the District Court's dismissal for several reasons: (1) Graham lacks standing to pursue his claims, (2) the subject insurance policies were valid and enforceable as a matter of law, (3) each of Graham's individual causes of action fails to state a claim upon which relief can be granted for independent reasons, and (4) Graham's claims are time-barred.

Defendants-Appellees ("Appellees") believe that oral argument will significantly aid the Court's resolution of this appeal and accordingly respectfully request thirty (30) minutes of oral argument per side.

iv

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Rule 26.1A, Appellees submit the following disclosures:

**Defendant-Appellee Catamaran Health Solutions LLC, f/k/a Catalyst Health Solutions, f/k/a HealthExtras Inc.:**

Defendant-Appellee Catamaran Health Solutions, LLC's sole member is Catamaran LLC. Catamaran LLC's sole member is Catamaran Holdings I, LLC. Catamaran Holdings I, LLC's sole member is 1031387 B.C. Unlimited Liability Company. 1031387 B.C. Unlimited Liability Company is a wholly-owned subsidiary of OptumRX Group Holdings, Inc. OptumRX Group Holdings, Inc. is a wholly-owned subsidiary of Optum, Inc. Optum, Inc. is a wholly-owned subsidiary of United HealthCare Services, Inc. United HealthCare Services, Inc. is a wholly-owned subsidiary of UnitedHealth Group Incorporated. UnitedHealth Group Incorporated is a publicly traded corporation.

**Defendant-Appellee Virginia Surety Company, Inc.:**

Defendant-Appellee Virginia Surety Company, Inc. is a wholly owned subsidiary of TWG Holdings, Inc., a Delaware corporation whose ultimate parent is TWG Holdings Limited. TWG Holdings Limited is a

v

Bermuda corporation. No publicly-held corporation owns 10% or more of Virginia Surety Company, Inc.'s stock.

**Defendant-Appellee Stonebridge Life Insurance Company:**

Defendant-Appellee Stonebridge Life Insurance Company merged into Transamerica Life Insurance Company on October 1, 2015. Transamerica Life Insurance Company is wholly owned by Commonwealth General Corporation, which is wholly owned by Transamerica Corporation, which is an indirect subsidiary of AEGON N.V., which is a publicly traded company with its headquarters in The Hague, Netherlands. The principal market for common shares of AEGON N.V. is Euronext Amsterdam. Common shares of AEGON N.V. are also listed on the New York Stock Exchange (Ticker: AEG).

Appellate Case: 16-1161     Page: 6     Date Filed: 03/31/2016 Entry ID: 4384037

# TABLE OF CONTENTS

Page

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ................................................................................iv

CORPORATE DISCLOSURE STATEMENT ...........................................v

TABLE OF AUTHORITIES .................................................................ix

JURISDICTIONAL STATEMENT ........................................................1

COUNTER-STATEMENT OF THE ISSUES ...........................................1

STATEMENT OF THE CASE ..............................................................3

I.      Background ...........................................................................3

II.     Facts Alleged in the First Amended Class Action
        Complaint .............................................................................4

III.    Appellees' Motions to Dismiss ...............................................5

IV.     The District Court's October 1, 2015 Order ...........................7

SUMMARY OF THE ARGUMENT .......................................................9

ARGUMENT ...................................................................................11

I.      Standard of Review ...............................................................11

II.     The Dismissal Was Proper Because Graham Lacks
        Article III Standing and the Policies Are Valid and
        Enforceable. ........................................................................12

        A.      Graham Failed to Allege a "Concrete and
                Particularized" Injury. ..............................................12

        B.      The Policies Were Valid and Enforceable Under
                Arkansas Law ...........................................................15

        C.      Multiple Federal Courts Have Dismissed
                Lawsuits Relating to the Same Program Because

vii

# TABLE OF CONTENTS
### *(cont'd)*

Page

      the Policies Are Valid and Enforceable as a Matter of Law. ........................................................ 19

D. The Court Should Reject Graham's Invitation to Limit the Applicability of Arkansas's Savings Statute. .................................................................. 25

E. The Court Also Should Reject Graham's Reading of the Savings Statute as Applying Only When Invoked by an Insured. ........................................... 35

F. Merely Pleading the Alleged Statutory Violations at Issue Is Not Sufficient to Confer Standing. ...................... 47

G. Pleading a Theory that Is Foreclosed By Statute Is Insufficient to Confer Standing. ............................ 49

III. The Court Should Affirm the District Court's Dismissal of Each of Graham's Causes of Action Under Rule 12(b)(6) For Independent Reasons. ...................... 50

A. The District Court Did Not Err in Dismissing the Entirety of Graham's Unjust Enrichment, Conversion, and Civil Conspiracy Claims. ........................... 50

B. This Court Should Affirm the Dismissal of the Breach of Contract Claim Under Rule 12(b)(6). ................. 56

IV. The District Court Properly Dismissed Graham's Unjust Enrichment, Conversion, and Civil Conspiracy Claims As Time-Barred. ............................................ 58

CONCLUSION ................................................................. 66

CERTIFICATE OF COMPLIANCE ..................................... 68

CERTIFICATE OF SERVICE ............................................. 69

Appellate Case: 16-1161    Page: 8    Date Filed: 03/31/2016 Entry ID: 4384037

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*3405 Putnam Realty Corp. v. Chubb Custom Ins. Co.,*
14 A.D.3d 310 (N.Y. App. Div. 2005) .................................................. 18

*Adkinson v. Kilgore,*
970 S.W.2d 327 (Ark. Ct. App. 1998) ................................................. 53

*Ark. Dep't of Envtl. Quality v. Brighton Corp.,*
102 S.W.3d 458 (Ark. 2003) ............................................................... 56

*Ashley v. U.S. Dep't of Interior,*
408 F.3d 997 (8th Cir. 2005) ............................................................... 50

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................... 57

*Bice v. United Am. Ins. Co.,*
No. 09-6051, 2010 WL 2691690 (W.D. Ark. Jul. 6, 2010) ................. 65

*Bragg v. Morgan,*
No. 99-1135, 2000 Ark. App. LEXIS 608 (Ark. Ct. App. Sept. 27,
2000) .................................................................................................... 58

*Cal Serv Station & Auto Repaid Ass'n v. Am. Home Assurance Co.,*
62 Cal. App. 4th 1166 (1998) ............................................................. 55

*Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,*
No. 14-0892(RC), 2015 U.S. Dist. LEXIS 123202 (D.D.C.
Sept. 16, 2015) ....................................................................... 10, 24, 25

*Carrier v. Allstate Ins. Co.,*
702 So.2d 367 (1997) (La. Ct. App. 1st Cir. 1997) ........................... 18

*Chalfonte Condo. Apt. Ass'n v. QBE Ins. Corp.,*
526 F. Supp. 2d 1251 (S.D. Fla. 2007) .............................................. 34

*Cinkutis v. Confederation Life Ins. Co.,*
No. 89-8354, 1990 WL 161260 (E.D. Pa. Oct. 19, 1990) .................. 18

Appellate Case: 16-1161     Page: 9     Date Filed: 03/31/2016 Entry ID: 4384037

Page(s)

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ............................................................ 10, 13, 14

*Clayton's Auto Glass, Inc. v. First Data Corp.*,
No. 12-5018, 2013 WL 5460872 (E.D.N.Y. Sept. 30, 2013) ........ passim

*Delanno, Inc. v. Peace*,
237 S.W.3d 81 (Ark. 2006) ................................................................ 60

*Design Prof'ls Ins. Co. v. Chicago Ins. Co.*,
454 F.3d 906 (8th Cir. 2006) ............................................................. 48

*DirecTV, Inc. v. Tolson*,
498 F. Supp. 2d 784 (E.D.N.C. 2007) ............................................... 50

*E.M. v. N.Y. City Dep't of Educ.*,
758 F.3d 442 (2d Cir. 2014) ............................................................. 48

*El-Ad Enclave at Miramar Condo. Ass'n, Inc., v. Mt. Hawley Ins. Co.*,
752 F. Supp. 2d 1282 (S.D. Fla. 2010) ............................................. 46

*Evans v. JP Morgan Chase Bank, N.A.*,
No. 12-1038, 2014 WL 359226 (W.D. Ark. Feb. 3, 2014) ................... 52

*Excelsior Ins. Co. v. Pomona Park Bar & Package Store*,
369 So. 2d 938 (Fla. 1979) .......................................................... 39, 40

*Ferrell v. Elkins*,
251 S.W. 380 (Ark. 1923) ..................................................... 18, 31, 38

*Francis v. Protective Life Ins. Co.*,
249 S.W.3d 828 (Ark. Ct. App. 2007), *rev'd on other grounds*, 265
S.W.3d 117 (Ark. 2007) ............................................................. 17, 31

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......................................................................... 12

Appellate Case: 16-1161    Page: 10    Date Filed: 03/31/2016 Entry ID: 4384037

*Gaunt v. La. Citizens Prop. Ins. Corp.*,
    512 F. Supp. 2d 493 (E.D. La. 2007) ...................................................52

*Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*,
    No. 13-6272, 2015 U.S. Dist. LEXIS 162628
    (D.N.J. Dec. 4, 2015) ................................................................ 10, 22, 23

*Hammer v. Sam's East, Inc.*,
    754 F.3d 492 (8th Cir. 2014) .........................................................48

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ........................................................................48

*Helfaer v. John Hancock Mut. Life Ins. Co.*,
    274 N.Y.S.2d 494 (N.Y. Sup. Ct. 1966) ......................................42

*Highlands Ins. Co. v. Am. Marine Corp.*,
    607 F.2d 1101 (5th Cir. 1979) ................................................... 29, 30

*Hill v. Agri-Risk Servs.*,
    827 P.2d 904 (Okla. Ct. App. 1992) ......................................... 28, 29

*Hill v. State Farm Mut. Ins. Co.*,
    375 S.E.2d 727 (Va. 1999) .............................................................41

*Impress Commc'ns v. Unumprovident Corp.*,
    335 F. Supp. 1053 (C.D. Cal. 2003) ............................................14

*In re Drummond*,
    17 B.R. 494 (Bankr. E.D. Ark. 1981) ..........................................26

*Jarrett v. Panasonic Corp. of N. Am.*,
    8 F. Supp. 3d 1074 (E.D. Ark. 2013) ..........................................53

*Jasa v. Millard Pub. Sch. Dist. No. 17*,
    206 F.3d 813 (8th Cir. 2000) .........................................................26

Appellate Case: 16-1161     Page: 11     Date Filed: 03/31/2016 Entry ID: 4384037

# TABLE OF AUTHORITIES
## *(cont'd)*

Page(s)

*Kirby v. United Am. Ins. Co.*,
No. 08-388, 2010 U.S. Dist. LEXIS 24580 (E.D. Ark.
Jan. 22, 2010) ...................................................................... 65

*Latta v. Farmers Cnty. Mut. Fire Ins. Co.*,
313 S.E.2d 214 (N.C. App. 1984) ........................................ 44

*Lemy v. Direct Gen. Fin. Co.*,
885 F. Supp. 2d 1265 (M.D. Fla. 2012) .......................... 45, 46

*Levine v. Blue Shield of Cal.*,
189 Cal. App. 4th 1117 (2010) ............................................ 55

*Long Term Care Partners, LLC v. United States*,
516 F.3d 225 (4th Cir. 2008) ............................................... 49

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................. 10, 12, 13

*MacSteel Div. of Quanex v. Ark. Okla. Gas Corp.*,
210 S.W.3d 878 (Ark. 2005) ...................................... 34, 36, 37

*Markel Serv., Inc. v. Nat'l Farm Lines*,
426 F.2d 1123 (10th Cir. 1970) ........................................... 18

*Marks v. Powell*,
162 B.R. 820 (E.D. Ark. 1993) ............................................ 56

*McClain v. Am. Econ. Ins. Co.*,
424 F.3d 728 (8th Cir. 2005) ............................................... 12

*McCullough Transfer Co. v. Virginia Sur. Co.*,
213 F.2d 440 (6th Cir. 1954) ............................................... 35

*McDonald v. Bowen*,
468 S.W.2d 765 (Ark. 1971) ............................................... 26

xii

# TABLE OF AUTHORITIES
*(cont'd)*

*Monteleone v. Auto Club Grp.*,
No. 13-CV-12716, 2015 WL 71915 (E.D. Mich.
Jan. 6, 2015) ........................................................................................ 15

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*,
406 F.3d 1052 (8th Cir. 2005) ............................................................. 63

*OnePoint Solutions, LLC v. Borchert*,
486 F.3d 342 (8th Cir. 2007) ............................................................... 11

*Peace v. Bank of Am., N.A.*,
No. 10-58, 2010 WL 996005 (E.D. Ark. Mar. 17, 2010) ...................... 53

*People v. United Nat'l Life Ins. Co.*,
427 P.2d 199 (Cal. 1967) ..................................................................... 18

*Petruzzo v. HealthExtras, Inc.*,
No. 12-113, 2015 U.S. Dist. LEXIS 113489
(E.D.N.C. May 22, 2015) ......................................................... 10, 20, 44

*Phillips v. The Marist Society*,
80 F.3d 274 (8th Cir. 1996) ........................................................... 11, 27

*Posner v. U.S. Fidelity & Guar. Co.*,
226 N.Y.S.2d 1011 (N.Y. Sup. Ct. 1962) ............................................ 42

*Potter v. City of Tontitown*,
264 S.W.3d 473 (Ark. 2007) ................................................... 35, 36, 37

*Quanta Specialty Lines Ins. Co. v. Inv'rs Capital Corp.*,
No. 06-4624, 2008 WL 1910503 (S.D.N.Y. Apr. 30, 2008) ................ 34

*Raines v. Byrd*,
521 U.S. 811 (1997) ............................................................................ 49

*Reed v. Guard*,
285 S.W.3d 662 (Ark. 2008) ............................................................... 59

Appellate Case: 16-1161    Page: 13    Date Filed: 03/31/2016 Entry ID: 4384037

Page(s)

*Restaurant Enterprises v. Sussex Mut. Ins. Co.*,
243 A.2d 808 (N.J. 1968)....................................................................22

*Rice v. Ragsdale*,
292 S.W.3d 856 (Ark. 2009)..............................................................59

*Richardson v. Bank of Am., N.A.*,
643 S.E.2d 410 (N.C. Ct. App. 2007)...............................................44

*Riddle v. Udouj*,
267 S.W.3d 586 (Ark. 2007)..............................................................60

*Security Life Ins. Co. v. Clark*,
494 S.E.2d 388 (1997), *rev'd in part sub nom.*,
509 S.E.2d 602 (1998).......................................................................29

*Self v. Addison Prods. Co.*,
No. 99-826, 2000 Ark. App. LEXIS (Ark. Ct. App.
Mar. 22, 2000) ..................................................................................60

*Southern Cas. Co. v. Hughes*,
263 P. 584 (Ariz. 1928)......................................................................34

*Sovereign Camp, W.O.W. v. Law*,
80 S.W.2d 50 (Ark. 1935)..................................................................19

*Stahl v. U.S. Dep't of Agric.*,
327 F.3d 697 (8th Cir. 2003)..............................................................63

*Stainback v. Investor's Consol. Ins. Co.*,
306 S.E.2d 532 (N.C. App. 1983)......................................................43

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998).............................................................................12

*Sun Life Assurance Co. of Can. v. Moran*,
Nos. 08-629, 08-632, 2009 WL 2450443 (D. Ariz.
Aug. 11, 2009)....................................................................................49

Appellate Case: 16-1161    Page: 14    Date Filed: 03/31/2016 Entry ID: 4384037

*The Harrison Agency, Inc. v. Pacific Mut. Life Ins.Co.*,
  703 F. Supp. 441 (W.D.N.C. 1989) ...................................................... 43

*United States v. Gambler's Supply, Inc.*,
  925 F. Supp. 658 (D.S.D. 1996) .......................................................... 49

*Urrutia v. Decker*,
  992 S.W. 2d 440 (Tex. 1999) ............................................................... 18

*Varner v. Peterson Farms*,
  371 F.3d 1011 (8th Cir. 2004)........................................................ 53, 58

*Vincent v. Prudential Ins. Brokerage*,
  970 S.W.2d 215 (Ark. 1998) ................................................................ 31

*Waiserman v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  No. 14-667, 2014 U.S. Dist. LEXIS 183642 (C.D. Cal.
  Oct. 24, 2014) ........................................................................ 10, 20, 21

*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003)............................................................. 50

*Warth v. Seldin*,
  422 U.S. 490 (1975) ............................................................................ 47

*Watson v. AFCO Steel, LLC*,
  No. 4:09-CV-660-WRW, 2010 WL 4269235
  (E.D. Ark. Oct. 28, 2010)..................................................................... 51

*Watson v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*,
  No. 14-1312, 2015 U.S. Dist. LEXIS 131094
  (E.D. La. Sept. 29, 2015).............................................................. 10, 21

*Weaver v. Aetna Life Ins. Co.*,
  No. 08-37, 2008 U.S. Dist. LEXIS 93658 (D. Nev.
  Nov. 4, 2008), *aff'd*, 370 F. App'x 822 (9th Cir. 2010) ........................ 14

*Williams v. Cont'l Life & Accident Co.*,
  593 P.2d 708 (Idaho 1979) .................................................................. 18

Appellate Case: 16-1161    Page: 15    Date Filed: 03/31/2016 Entry ID: 4384037

# TABLE OF AUTHORITIES
## *(cont'd)*

Page(s)

*Williams v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*,
  No. 14-309, 2016 U.S. Dist. LEXIS 22762 (N.D. Ga.
  Feb. 24, 2016) .................................................................. 10, 24

*Williams v. Nat'l Union Fire Ins.Co. of Pittsburgh, Pa.*,
  No. 14-309, 2014 U.S. Dist. LEXIS 123040 (N.D. Ga.
  Sept. 4, 2014) .......................................................... 10, 23, 46

*Willis v. Nationwide Mut. Ins. Co.*,
  No. 14-4024, 2014 U.S. Dist. LEXIS 138487 (W.D. Ark.
  Sept. 30, 2014) .................................................................... 58

*Wright v. Newman*,
  735 F.2d 1073 (8th Cir. 1984) ............................................ 51

## STATUTES

Ark. Code Ann. § 16-56-105 ................................................ 58

Ark. Code Ann. § 23-60-108 ................................................ 32

Ark. Code Ann. § 23-60-109 ................................................ 32

Ark. Code Ann. § 23-61-103 ............................................ 32, 39

Ark. Code Ann. § 23-61-108 ................................................ 39

Ark. Code Ann. § 23-61-110 ............................................ 32, 39

Ark. Code Ann. § 23-63-113 ................................................ 32

Ark. Code Ann. § 23-63-522(f)(2) ........................................ 33

Ark. Code Ann. § 23-79-11 .................................................. 49

Ark. Code Ann. § 23-79-109 ........................................ passim

Ark. Code Ann. § 23-79-112 ................................................ 33

xvi

# TABLE OF AUTHORITIES
### *(cont'd)*

Page(s)

Ark. Code Ann. § 23-79-118 ............................................................ passim

Ark. Code Ann. § 23-79-144 ................................................................. 33

Ark. Code Ann. § 23-79-202(a) ............................................................. 58

Ark. Code Ann. § 23-80-206(a) ....................................................... 17, 31

Ark. Code Ann. § 23-86-101 ........................................................... passim

Ark. Code Ann. § 23-86-102 ........................................................... passim

Ark. Code Ann. § 23-86-106 ........................................................... passim

D.C. Code § 31-4712(d)(2) ................................................................... 24

Fla. Stat. § 627.418(1) ................................................................... 40, 45

N.C. Gen. Stat. § 58-50-15 .................................................................. 20

N.C. Gen Stat. § 58-50-15(b) ............................................................... 43

N.C. Gen. Stat. § 58-258(b) ........................................................... 43, 44

N.Y. Ins. Code § 3103(a) .................................................................... 42

O.C.G.A. § 33–24–12(a) ...................................................................... 23

O.C.G.A. § 33-34-12(b) ...................................................................... 46

Va. Code Ann. § 38.2-318(A) ............................................................... 41

## RULES

Federal Rules of Civil Procedure 9(b) ....................................................... 5

Federal Rules of Civil Procedure 12(b)(1) ..................................... passim

Federal Rules of Civil Procedure 12(b)(6) ..................................... passim

Appellate Case: 16-1161   Page: 17   Date Filed: 03/31/2016 Entry ID: 4384037

# TABLE OF AUTHORITIES
*(cont'd)*

Page(s)

**OTHER AUTHORITIES**

*http://www.merriam-webster.com/dictionary/condition* ..................... 27

Article III of the United States Constitution .................................. passim

Appellate Case: 16-1161    Page: 18    Date Filed: 03/31/2016 Entry ID: 4384037

## JURISDICTIONAL STATEMENT

Appellees agree with the jurisdictional statement on page 1 of Graham's brief.  But, as discussed more fully below, Appellees dispute that Graham has alleged facts that, if true, establish an injury-in-fact under Article III.

## COUNTER-STATEMENT OF THE ISSUES

**Issue 1:**  Whether the District Court's dismissal of the First Amended Class Action Complaint should be affirmed because Graham lacked standing to pursue his claims as (a) he does not allege having suffered a covered loss, made a claim for benefits under the subject policies, or had such a claim denied, and in fact, seeks to represent a class that excludes persons with "[a]ctual identifiable claims for disability benefits that have already arisen that may be payable under the terms of said disability insurance policies," and (b) the subject policies were valid and enforceable as a matter of law under Ark. Code Ann. § 23-79-118 and Arkansas common law.

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013)
Ark. Code Ann. § 23-79-118
*Francis v. Protective Life Ins. Co.*, 249 S.W.3d 828 (Ark. Ct. App. 2007),
    *rev'd on other grounds*, 265 S.W.3d 117 (Ark. 2007)
*Ferrell v. Elkins*, 251 S.W. 380 (Ark. 1923)

1

**Issue 2:** Whether the District Court's dismissal of the First Amended Class Action Complaint was proper under Rule 12(b)(6) for the same reasons listed in Issue 1.

Ark. Code Ann. § 23-79-118
*Francis v. Protective Life Ins. Co.*, 249 S.W.3d 828 (Ark. Ct. App. 2007),
    *rev'd on other grounds*, 265 S.W.3d 117 (Ark. 2007)
*Ferrell v. Elkins*, 251 S.W. 380 (Ark. 1923)
*Petruzzo v. HealthExtras, Inc.*, No. 12-113, 2015 U.S. Dist. LEXIS
    113489 (E.D.N.C. May 22, 2015)

**Issue 3:** Whether the District Court's dismissal of Graham's First Amended Class Action Complaint should be affirmed because Graham fails to state a claim upon which relief can be granted as to each of his causes of action.

*Varner v. Peterson Farms*, 371 F.3d 1011 (8th Cir. 2004)
*Marks v. Powell*, 162 B.R. 820 (E.D. Ark. 1993)
*Gaunt v. Louisiana Citizens Prop. Ins. Corp.*, 512 F. Supp. 2d 493 (E.D.
    La. 2007)

**Issue 4:** Whether the District Court's dismissal of the First Amended Class Action Complaint was proper under Rule 12(b)(6) because Graham's claims are time-barred.

Ark. Code Ann. § 23-79-202(a)
*Shelter Mut. Ins. Co. v. Nash*, 184 S.W.3d 425, 428 (2004)
*Adams v. Arthur*, 969 S.W.2d 598, 603 (Ark. 1998)
*Bice v. United Am. Ins. Co.*, No. 09-6051, 2010 WL 2691690 (W.D. Ark.
    Jul. 6, 2010)

## STATEMENT OF THE CASE

### I.    Background

Graham alleges that he is the victim of an "illegal scheme" pursuant to which Appellees marketed and issued "illegal," "illusory," and "worthless" group disability insurance covering Arkansas residents who enrolled in a supplemental benefits program (the "Program"). First Amended Class Action Complaint ("FAC"), ¶¶ 22, 27, 37–51, 55, 65, 71, 75, 87, 111 (J.A. 181–83, 186–94, 197, 199–200, 202). Specifically, Graham contends that the disability policies covering Program members (the "Policies") were void and unenforceable because they did not comply with certain provisions of the Arkansas Insurance Code relating to the types of groups eligible to receive such coverage. FAC, ¶¶ 56–73 (J.A. 194–99). Accordingly, Graham claims that he and the putative class members are entitled to a refund of all Program fees they paid over 12 or 13 years, treble damages, punitive damages, interest, injunctive relief, and attorneys' fees and costs. FAC, ¶ 25 and Prayer for Relief (J.A. 182, 211–12).

On October 1, 2015, the District Court (Wilson, D.J.) dismissed the First Amended Class Action Complaint under Rule 12(b)(6) upon finding that (1) the Policies were neither worthless nor illusory, but rather were

Appellate Case: 16-1161    Page: 21    Date Filed: 03/31/2016 Entry ID: 4384037

valid and enforceable under Ark. Code Ann. § 23-79-118, and (2) Graham's claims are barred by the statute of limitations. (J.A. 639–42). This appeal arises from the District Court's October 1, 2015 Order.

## II. Facts Alleged in the First Amended Class Action Complaint

Graham filed his First Amended Class Action Complaint on January 7, 2015. (J.A. 175–255). In that pleading, Graham alleges that he enrolled in the Program "[a]fter receiving written solicitations" "sometime in 2001 or 2002." FAC, ¶¶ 47, 49 (J.A. 192). In connection with his enrollment, Graham agreed to pay, and has paid, fees to receive (1) accidental permanent and total disability insurance underwritten by Appellee Stonebridge Life Insurance Company ("Stonebridge"), and (2) emergency accident and sickness medical expense coverage underwritten by Appellee Virginia Surety Company, Inc. ("Virginia Surety"). FAC, ¶¶ 37–38, 49, 94, 104 (J.A. 186–87, 192, 203, 205).

Graham argues that the coverage provided to him over 12 or 13 years (from 2001 or 2002 to 2014) was "illegal," "illusory," and "worthless" because the Policies were issued to an invalid "blanket group" under Ark. Code Ann. §§ 23-86-101 and 23-86-106. FAC, ¶¶ 63, 65, 67–68 (J.A. 196–98). Graham also argues that Appellees violated Ark.

4

Code Ann. §§ 23-86-102 and 23-79-109 by failing to file the policy forms with, and obtain approval from, the Arkansas Insurance Department ("DOI") before issuing coverage to Arkansas residents. FAC, ¶¶ 57–58, 62 (J.A. 194, 196). Alternatively, he asserts that Appellees breached the Policies by discontinuing the Program in December 2014. FAC, ¶¶ 50–51, 115–16 (J.A. 192–93, 207).

Notwithstanding the foregoing contentions, the First Amended Class Action Complaint discloses that Graham received the benefit of his insurance coverage without interruption from the date he enrolled in the Program through the date he filed this lawsuit. Graham does *not* allege that he incurred a covered loss. Nor does he allege that he ever submitted a claim for benefits, let alone that a claim was wrongfully denied. In fact, Graham's proposed class expressly excludes persons with "[a]ctual identifiable claims for disability benefits that have already arisen that may be payable under the terms of said disability insurance policies." FAC, ¶ 31(e) (J.A. 184).

## III. Appellees' Motions to Dismiss

On January 26, 2015, Appellees filed separate motions to dismiss, with briefs in support, under Rules 9(b), 12(b)(1), and 12(b)(6) of the

Appellate Case: 16-1161     Page: 23     Date Filed: 03/31/2016 Entry ID: 4384037

Federal Rules of Civil Procedure. (J.A. 266–345). Appellees joined in and adopted the arguments contained in each other's motions. (J.A. 273, 309, 340–45).

Appellee Catamaran Health Solutions, LLC ("Catamaran") demonstrated in its motion that Graham's claims should be dismissed under Rule 12(b)(6) because the Policies were valid and enforceable under Ark. Code Ann. § 23-79-118 and Arkansas common law, even assuming they did not comply with the Arkansas Insurance Code as alleged by Graham. (J.A. 276–81). Catamaran also argued that Graham lacked standing to pursue his claims because they were based on a hypothetical, speculative injury—that *if* he had become disabled and submitted a covered claim for benefits, Appellees *might* have wrongly denied his claim. (J.A. 281–82). Virginia Surety contended in its motion that Graham's claims are time-barred. (J.A. 313–18). Both Catamaran and Virginia Surety also argued that all of Graham's claims should be dismissed under Rule 12(b)(6) for pleading failures. (J.A. 286–90, 312–13).

Graham filed a consolidated response in opposition to Appellees' motions to dismiss on February 16, 2015. (J.A. 346–471). Appellees filed

6

a consolidated reply in support of their motions on February 27, 2015. (J.A. 472–81).

## IV. The District Court's October 1, 2015 Order

On October 1, 2015, the District Court granted Appellees' motions and dismissed the First Amended Class Action Complaint. (J.A. 639–42). After reciting the relevant facts and applicable legal standards, the District Court explained that the "crux of Plaintiff's theory is that the policy at issue was void and worthless because it violated Arkansas law defining groups to which policies may be issued." (J.A. 641). The District Court then held that "[e]ven assuming that the group to whom the policy was issued was invalid under Arkansas law, the policy was not void under Arkansas law," in particular Ark. Code Ann. § 23-79-118, which provides:

> An insurance policy . . . issued and otherwise valid that contains any condition or provision not in compliance with state law is not rendered invalid but shall be construed and applied according to the conditions and provisions that would have applied had the policy . . . been in full compliance with state law.

(J.A. 641–42). In light of the statute, the District Court found that "Plaintiff's policy was not worthless—if he had made a valid claim under

7

the policy, Defendants would have been legally obligated to pay him benefits." (J.A. 642).

The District Court also concluded that Graham's claims were barred by the statute of limitations:

> A suit by an insured against an insurer to recover a claim arising under an insurance policy has a five-year statute of limitations. Plaintiff's claims began to run when he first enrolled in the program and began paying premiums, which was no later than 2002. Accordingly, Plaintiff had until 2007 to bring suit against Defendants.

(J.A. 642 (footnote omitted)).

The District Court did not address Appellees' standing argument under Rule 12(b)(1) or their arguments that various of Graham's claims should be dismissed under Rule 12(b)(6) for pleading failures.

The District Court entered a final judgment on December 15, 2015. (J.A. 650). Graham filed a notice of appeal on January 14, 2016. (J.A. 651–52).

8

## SUMMARY OF THE ARGUMENT

The District Court properly determined that this action cannot proceed and should be dismissed. Graham has not suffered a cognizable injury and thus lacks standing to sue under Article III of the United States Constitution. The fundamental premise of Graham's claims is that the Policies are void and unenforceable because they allegedly were not issued to an eligible group and were not filed with and approved by the DOI. This premise fails as a matter of law under the Arkansas Insurance Code, including Ark. Code Ann. § 23-79-118, which renders the Policies valid and enforceable notwithstanding the regulatory violations alleged by Graham.

Even more fundamentally, Graham has acknowledged that he was not harmed by any supposedly illusory insurance coverage. The First Amended Class Action Complaint does not allege that Graham experienced any accident that would have triggered his right to collect under the policy. To the contrary, he has specifically defined the class he wishes to represent as excluding anyone who actually might have had a claim, which he expressly concedes (by excluding would-be claimants) might have been paid. FAC, ¶ 31(e) (J.A. 184).

9

Simply put, Graham's claim of illusory coverage is wholly contingent and speculative in nature. His claim is that *if* he had, in fact, experienced an accident triggering coverage, his insurer *might* not have paid him when he sought compensation. FAC ¶¶ 55, 77–78, 87–88, 92, 95, 111 (J.A. 194, 200–04, 206). Under settled Supreme Court law, such conjectural, hypothetical injury does not engage the jurisdiction of the federal courts. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Indeed, Graham's premise has been rejected repeatedly by other federal courts in virtually identical lawsuits.[1] Because Graham does not allege facts that establish standing or a valid claim against Appellees,

---

[1] *See Williams v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, No. 14-309, 2016 U.S. Dist. LEXIS 22762 (N.D. Ga. Feb. 24, 2016) (on appeal to 11th Cir., Case No. 16-11302); *Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, No. 13-6272, 2015 U.S. Dist. LEXIS 162628 (D.N.J. Dec. 4, 2015); *Watson v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, No. 14-1312, 2015 U.S. Dist. LEXIS 131094 (E.D. La. Sept. 29, 2015); *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 14-0892(RC), 2015 U.S. Dist. LEXIS 123202 (D.D.C. Sept. 16, 2015); *Petruzzo v. HealthExtras, Inc.*, No. 12-113, 2015 U.S. Dist. LEXIS 113489 (E.D.N.C. May 22, 2015) (on appeal to 4th Cir., Case No. 15-1673); *Waiserman v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 14-667, 2014 U.S. Dist. LEXIS 183642 (C.D. Cal. Oct. 24, 2014) (on appeal to 9th Cir., Case No. 14-56813); *Williams*, No. 14-309, 2014 U.S. Dist. LEXIS 123040 (N.D. Ga. Sept. 4, 2014).

Appellate Case: 16-1161     Page: 28     Date Filed: 03/31/2016 Entry ID: 4384037

the District Court properly dismissed the First Amended Class Action Complaint.

Dismissal of Graham's claims also was correct for two independent reasons: (1) his claims fail to state a claim upon which relief can be granted, and (2) his claims are barred by the statute of limitations. Accordingly, the District Court's order of dismissal should be affirmed.

## ARGUMENT

### I. Standard of Review

This Court reviews *de novo* the dismissal of a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6). *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 347 (8th Cir. 2007). The Court "may affirm on any ground supported by the record, whether or not that ground was addressed by the District Court." *Phillips v. The Marist Society*, 80 F.3d 274, 275 (8th Cir. 1996). Thus, this Court may affirm because Graham lacks standing under Rule 12(b)(1) or because he failed to state a claim upon which relief can be granted under Rule 12(b)(6).

Appellate Case: 16-1161   Page: 29   Date Filed: 03/31/2016 Entry ID: 4384037

## II. The Dismissal Was Proper Because Graham Lacks Article III Standing and the Policies Are Valid and Enforceable.

### A. Graham Failed to Allege a "Concrete and Particularized" Injury.

Under Article III of the United States Constitution, the jurisdiction of the federal courts is limited to "Cases" and "Controversies." *Lujan*, 504 U.S. at 559–60. To satisfy the case-or-controversy requirement, a plaintiff must establish standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998); *McClain v. Am. Econ. Ins. Co.*, 424 F.3d 728, 731 (8th Cir. 2005) ("Whether a plaintiff has standing to sue is the threshold issue in every federal case, determining the power of the court to entertain the suit."). This requires the plaintiff to show: (1) he suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the complained of conduct of the defendant; and (3) it is likely, as opposed to merely speculative, that the requested relief will redress or remedy the alleged injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The party invoking federal jurisdiction has the burden of establishing all three elements. *Lujan*, 504 U.S. at 561.

Appellate Case: 16-1161    Page: 30    Date Filed: 03/31/2016 Entry ID: 4384037

Of particular importance in this case is the requirement that a plaintiff cannot merely theorize potential injuries to confer federal jurisdiction. To the contrary, the plaintiff must establish that his injury is "actual or imminent, not conjectural or hypothetical." *Id.* at 560. Speculative assertions of potential injury have been rejected as insufficient to confer standing. *Clapper*, 133 S. Ct. at 1147–49; *Lujan*, 504 U.S. at 565 n.2. In other words, injury based on a "speculative chain of possibilities" does not satisfy Article III. *Clapper*, 133 S. Ct. at 1150.

Here, Graham's assertion of injury in the First Amended Class Action Complaint is precisely the kind of "speculative chain of possibilities" that has been rejected as falling short of the "irreducible constitutional minimum." *Lujan*, 555 U.S. at 560–61. Graham does not assert an actual injury. He has not alleged that he has ever been injured in a covered accident, made claims for benefits under the Program, or been denied benefits, whether because the Policies are invalid under Arkansas law or for any other reason.

Instead, Graham's claims are grounded on his speculative, hypothetical assertion that *if* he had become disabled, and *if* he had filed a claim for benefits, his claim *might* have been denied. FAC ¶¶ 55, 77–78,

13

87–88, 92, 95, 111 (J.A. 194, 200–04, 206). In fact, his proposed class expressly excludes anyone with "[a]ctual identifiable claims for disability benefits that have already arisen that may be payable under the terms of [the] disability insurance policies." FAC, ¶ 31(e) (J.A. 184). Thus, Graham distinguishes himself from other insureds not included in the proposed class who actually suffered an incident triggering potential coverage and who may well have recovered under the Policies. It follows that if Graham *had* been injured, he too *might* have recovered.

Graham's assertion of a *potential* claim denial is a far cry from the kind of "actual" injury that confers federal jurisdiction, and it also is well short of the kind of "threatened injury [that is] certainly impending" that the Supreme Court has set as the standard for potential injury. *Clapper*, 133 S. Ct. at 1147. For this reason, Graham lacks standing to bring this action, and the District Court's dismissal, even though it did not rely on this ground, should be affirmed.[2]

---

[2] *See also Weaver v. Aetna Life Ins. Co.*, No. 08-37, 2008 U.S. Dist. LEXIS 93658, at *8 (D. Nev. Nov. 4, 2008) (dismissing unjust enrichment claim for lack of standing where plaintiff alleged she "paid premiums for a nonexistent policy," because "one could not deem a policy nonexistent unless [the plaintiff] was improperly denied benefits. Any other claim of a 'nonexistent' policy ventures into the metaphysical."), *aff'd*, 370 F. App'x 822 (9th Cir. 2010); *Impress Commc'ns v. Unumprovident Corp.*,

14

## B. The Policies Were Valid and Enforceable Under Arkansas Law.

As explained above, Graham argues that the Policies were void and unenforceable because they were issued to an invalid "blanket group" under Ark. Code Ann. § 23-86-101, which lists the categories of permissible "blanket accident and health insurance" policyholders, or Ark. Code Ann. § 23-86-106, which lists the categories of permissible "group accident and health insurance" policyholders.  FAC, ¶¶ 63, 65, 67–68 (J.A. 196–98).  Graham also argues that the Policies were void and unenforceable because Appellees violated Ark. Code Ann. §§ 23-86-102 and 23-79-109 by failing to file the policy forms with, and obtain approval from, the DOI.  FAC, ¶¶ 57–58, 62 (J.A. 194, 196).

As the District Court rightly held, even assuming the truth of those allegations, the Policies remain enforceable under the Arkansas Insurance Code (Title 23), in particular the Code's "savings statute" (Ark.

---

335 F. Supp. 1053 (C.D. Cal. 2003) (holding that because plaintiffs did not file claims or allege they were denied benefits, they could not establish they received less coverage than they bargained for and their injuries were purely speculative and did not confer standing); *Monteleone v. Auto Club Grp.*, No. 13-CV-12716, 2015 WL 71915, at *1, 4 (E.D. Mich. Jan. 6, 2015) (dismissing class action claim for breach of contract alleging illusory coverage on grounds that plaintiffs who never filed property loss claims "can show no actual injury").

15

Code Ann. § 23-79-118), which states that even noncompliant insurance policies remain valid and enforceable. Section 23-79-118 provides:

> An insurance policy . . . issued and otherwise valid that contains any condition or provision not in compliance with state law is not rendered invalid but shall be construed and applied according to the conditions and provisions that would have applied had the policy . . . been in full compliance with state law.

The statute demonstrates that the Arkansas legislature anticipated that an insurer might issue a policy later determined not to comply with the Code. Rather than declare such policies void—the declaration Graham seeks in this lawsuit—the legislature chose to protect consumers by deeming such policies valid and enforceable, provided that they must be construed and applied in such manner as to comply with state law.

Section 23-79-118 applies here because even Graham does not dispute that the Policies provide standard types of disability and emergency accident medical coverage that are "otherwise valid" under Arkansas law. Graham alleges that the Policies contain a "condition . . . not in compliance with state law," i.e., the Policies were issued to an invalid blanket group or were not filed with or approved by the DOI. Notwithstanding these allegations, under § 23-79-118, the Policies "[are]

16

not rendered invalid" and Graham did not pay for unenforceable coverage. Instead, the Policies are valid and enforceable and Graham received the coverage for which he paid. *See Francis v. Protective Life Ins. Co.*, 249 S.W.3d 828, 833 (Ark. Ct. App. 2007), *rev'd on other grounds*, 265 S.W.3d 117 (Ark. 2007) ("[The plaintiff] cites us to no cases in which an Arkansas court has declared an insurance policy invalid on the basis of Ark. Code Ann. § 23-80-206(a). Further, Ark. Code Ann. § 23-79-118 . . . precludes any relief to [the plaintiff] based on any noncompliance with the requirements of section 23-80-206.").

Section 23-79-118 is not an *exception* to the common law, as Graham asserts, but reflects the well-established principle recognized by courts throughout the country that consumers do not bear the risk of an insurer's noncompliance with insurance statutes or regulations. Virtually every other state similarly allows insureds to enforce noncompliant insurance policies, presumably because all states agree that the public policy adopted in Arkansas is sound and that deeming such policies to be void "would allow an insurer who has issued policies and collected premiums in violation of the law to avoid obligations to the detriment of

17

innocent" consumers. *People v. United Nat'l Life Ins. Co.*, 427 P.2d 199, 214 (Cal. 1967).[3]

Moreover, § 23-79-118 reflects the well-established common law principle, followed in Arkansas and virtually every state, that voiding a contract is an extreme remedy, rarely justified at law or equity. *See Ferrell v. Elkins*, 251 S.W. 380 (Ark. 1923) (recognizing the "sound principle" that before declaring a contract void "and permitting one who

---

[3] *See also, e.g.*, *Clayton's Auto Glass, Inc. v. First Data Corp.*, No. 12-5018, 2013 WL 5460872, at *4 (E.D.N.Y. Sept. 30, 2013) ("[T]he Florida Supreme Court has explicitly held that an insurer's failure to comply with provisions of the insurance code does not render the policy void and unenforceable, unless the legislature specifically provided for such a penalty."); *3405 Putnam Realty Corp. v. Chubb Custom Ins. Co.*, 14 A.D.3d 310, 312 (N.Y. App. Div. 2005) ("[A]n insurance company's failure to comply with the licensing scheme of this State does not invalidate the insurance contract."); *Urrutia v. Decker*, 992 S.W. 2d 440, 443 (Tex. 1999) (noting that insurance sold through an unapproved policy is voidable, not void); *Carrier v. Allstate Ins. Co.*, 702 So.2d 367 (1997) (La. Ct. App. 1st Cir. 1997) (holding that failure to submit an insurance form to state insurance commissioner for approval was not fatal to form's validity); *Cinkutis v. Confederation Life Ins. Co.*, No. 89-8354, 1990 WL 161260, at *7 (E.D. Pa. Oct. 19, 1990) (stating that "failure to obtain approval of forms from the Pennsylvania Insurance Commissioner does not render the insurance contract void"); *Williams v. Cont'l Life & Accident Co.*, 593 P.2d 708, 710 (Idaho 1979) (recognizing that insureds have right to enforce allegedly "illegal" insurance contracts against insurers); *Markel Serv., Inc. v. Nat'l Farm Lines*, 426 F.2d 1123, 1125 (10th Cir. 1970) ("Under Oklahoma law the alleged violation of the licensing provisions by [the insurer] would at most render the policy voidable at the option of the [insured].").

Appellate Case: 16-1161   Page: 36   Date Filed: 03/31/2016 Entry ID: 4384037

has received a valuable consideration for a promise fair upon its face to escape its performance by pleading the invalidity of his own agreement, such fatal defect therein must be so clear as to be free from doubt"); *see also Sovereign Camp, W.O.W. v. Law*, 80 S.W.2d 50, 52 (Ark. 1935) ("It is a general principle that forfeitures are not favored in law, and nowhere is this more applicable than in the construction of insurance contracts.").[4]

### C. Multiple Federal Courts Have Dismissed Lawsuits Relating to the Same Program Because the Policies Are Valid and Enforceable as a Matter of Law.

Notably, the District Court is not alone in enforcing the Policies. Other federal courts have dismissed identical lawsuits relating to a virtually identical program because the policies providing disability and emergency accident medical coverage to program members are valid and enforceable as a matter of law in states across the country. Arkansas is not alone in adopting the sensible rule that an insurance policy is valid notwithstanding any supposed technical regulatory violation by the insurer.

---

[4] Contrary to Graham's unsupported assertion (Appellant's Brief at 8), Appellees raised this argument to the District Court. (J.A. 278–79).

19

First, in *Petruzzo v. HealthExtras, Inc.*, No. 12-113, 2015 U.S. Dist. LEXIS 113489, at *21 (E.D.N.C. May 22, 2015), the district court rejected the plaintiffs' claim that their coverage under analogous policies was void, holding instead that the plaintiffs lacked standing because the policies were valid and enforceable under North Carolina's common law and savings statute, N.C. Gen. Stat. § 58-50-15. The savings statute provides that insurance policies that violate the statutory terms set forth in certain articles of the insurance code are valid, but that policy provisions in conflict with those terms are of no effect. *Id.* at *23. The court held that "[h]ad plaintiffs made a claim, the underwriter would have been obligated to process it in accordance with the terms thereof. Plaintiffs have never made a claim, and there is no allegation in the amended complaint that plaintiffs currently have any identifiable claim for disability benefits." *Id.* at *32–33.

Second, in *Waiserman v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, No. 14-667, 2014 U.S. Dist. LEXIS 183642 (C.D. Cal. Oct. 24, 2014), the district court rejected Graham's core theory, reasoning that although the defendants allegedly "violated a broad[] swath of state law," "California law dictates that the defendants' program is enforcea-

Appellate Case: 16-1161    Page: 38    Date Filed: 03/31/2016 Entry ID: 4384037

ble." *Id.* at *3–4.  The court concluded that "[b]ecause the program is enforceable and [the plaintiff] failed to submit a claim for benefits, he suffered no injury in-fact.  Thus, he lacks standing to sue in federal court." *Id.* at *4 (quoting *Medina v. Safe-Guard Prods., Int'l, Inc.*, 164 Cal. App. 4th 105, 111 (2008) ("Holding an insurance contract void because the insurer was not licensed is about the worst possible remedy for the illegality of the insurer's unlicensed status.  To do so would be incredibly harmful to consumers who unknowingly purchased insurance . . . who, all of a sudden, would find themselves stuck with a loss which they thought they validly insured against.") (emphasis added)).

Third, in *Watson v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, No. 14-1312, 2015 U.S. Dist. LEXIS 131094 (E.D. La. Sept. 29, 2015), the district court rejected the allegation that the subject policies were void and unenforceable because, *inter alia*, they were not issued to a lawful blanket group, holding that under Louisiana law "the insurers would have been obligated to pay any covered claims that plaintiffs made during the policy period if plaintiffs had made such claims." *Id.* at *23.

21

**Fourth**, in *Giercyk v. National Union Fire Insurance Co. of Pittsburg, Pa.*, No. 13-6272, 2015 U.S. Dist. LEXIS 162628 (D.N.J. Dec. 4, 2015), the district court held that (1) the subject policies were enforceable because no violation of the blanket insurance requirements would have rendered them void, and (2) the plaintiffs lacked standing because they had not filed a claim for benefits that was inappropriately denied. *Id.* at *10–11. Relying on *Restaurant Enterprises v. Sussex Mutual Insurance Co.*, 243 A.2d 808 (N.J. 1968), which held that an insurance policy was not void because it was "an industry regulation directed to the insurer," *id.* at 810, the district court determined that the blanket insurance statute is directed at the insurer and has no bearing on an individual insurance purchaser's rights under the blanket policy. 2015 U.S. Dist. LEXIS 162628, at *13–14. The court further held that voiding the Policies would be "patently unfair" to "a prospective insured" who "might well believe himself to be fully covered and feel it unnecessary to attempt to secure either the actual policy or insurance from another company only to find himself without the insurance he was led to believe he possessed." *Id.* at *14. Rather than allow a private litigant to sue to void the Policies, the court explained that "appropriate" regulatory

22

mechanisms already exist to enforce the statute, namely the New Jersey Department of Banking and Insurance's authority to impose sanctions if an insurer fails to comply with the blanket insurance statute. *Id.* at *14–15.

Fifth, in *Williams v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, No. 14-309, 2014 U.S. Dist. LEXIS 123040 (N.D. Ga. Sept. 4, 2014), the district court rejected the plaintiff's allegations that the subject policies were "illegal," "illusory," and "void" under Georgia law. *Id.* at *5–8. The court relied upon Georgia's savings statute, O.C.G.A. § 33–24–12(a), which is virtually identical to Arkansas's savings statute and provides:

> Any insurance policy . . . which contains any condition or provision not in compliance with the requirements of [Title 33, which governs insurance policies] shall not be rendered invalid due to the noncomplying condition or provision but shall be construed and applied in accordance with such conditions and provisions as would have applied had the policy . . . been in full compliance with [Title 33].

The court found that "even assuming the Plaintiffs' allegations to be true, the insurance policies they received were not 'illusory.' To the contrary, if the Plaintiffs had been entitled to any benefits under the policies, the Defendant would have been legally obligated to provide them." *Id.* at *6.

Appellate Case: 16-1161    Page: 41    Date Filed: 03/31/2016 Entry ID: 4384037

While the district court did not dismiss the complaint in its entirety on that basis, it later entered summary judgment in favor of the defendants on the ground that the plaintiff could not establish standing:

> Because none of the Plaintiffs submitted claims, the crux of the Plaintiffs' standing argument is the contention that if they had submitted claims, the Defendants would have denied their claims and forced them to sue for their benefits. Thus, according to the Plaintiffs, they paid for insurance policies that were virtually worthless. But this argument is mere speculation. It is impossible to know whether the Defendants would have denied their claims.

2016 U.S. Dist. LEXIS 22762, at *6 (N.D. Ga. Feb. 24, 2016).[5]

---

[5] In *Campbell v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, No. 14-0892(RC), 2015 U.S. Dist. LEXIS 123202 (D.D.C. Sept. 16, 2015), the district court dismissed several of the plaintiff's claims for lack of standing. *See id.* at *21–35. The court rejected the plaintiff's claim that her disability coverage was void because the policy providing it violated the District of Columbia's insurance laws. *Id.* at *31. As the above courts had done, the court relied on a savings statute, D.C. Code § 31-4712(d)(2), which mandates that a "policy delivered or issued for delivery to any person in the District in violation of this section shall be held valid." *Id.* at *44 n.18. The court explained that "to the extent [the plaintiff] asserts injury premised on payments for a policy that was invalid and unenforceable due to violations of DC insurance laws, the argument clearly fails as a matter of law." *Id.* at *31. The court also found that because the plaintiff had not submitted a claim or had one denied, her alleged injuries were speculative and hypothetical, thereby defeating her claim of standing:

> Significantly, [the plaintiff] never submitted a claim for coverage to Defendants or had a claim denied, and her complaint does not identify a single instance in which any insured had

Appellate Case: 16-1161    Page: 42    Date Filed: 03/31/2016 Entry ID: 4384037

The District Court in this case correctly held, as did these other district courts in addressing motions to dismiss in copycat suits by the same lead counsel, that if Graham had made a valid claim under the Policies (which he has not alleged having done), Arkansas law would have required Stonebridge and Virginia Surety to pay it. (J.A. 642). Thus, Graham's allegations of harm are entirely speculative, legally baseless, and do not satisfy Article III. Graham's claims, therefore, fail as a matter of law under Rule 12(b)(1) and Rule 12(b)(6), and dismissal was warranted.

### D.    The Court Should Reject Graham's Invitation to Limit the Applicability of Arkansas's Savings Statute.

On appeal, Graham urges this Court to make new law limiting the applicability of Ark. Code Ann. § 23-79-118. Specifically, Graham contends that § 23-79-118 calls for enforcement of an insurance policy only when it contains terms that do not comply with Arkansas law, but that can be revised to make the policy comply. Appellant's Brief at 12–14.

---

> his or her claim denied . . . . Such conjecture cannot replace the type of factual allegations necessary to transform a speculative chain of possibilities into a plausible allegation of concrete, actual injury in fact.

*Id.* at *25–26 (citations omitted).

Appellate Case: 16-1161    Page: 43    Date Filed: 03/31/2016 Entry ID: 4384037

Because Graham's "invalidity" allegations in this case do not pertain to particular terms in the Policies, he argues that the savings statute is inapplicable.

Graham misconstrues the statute. Specifically, he misreads the phrase "condition or provision" as meaning "policy term." *See* Ark. Code Ann. § 23-79-118 (covering "[a]ny insurance policy . . . which contains any condition or provision not in compliance with" the Insurance Code). This interpretation violates the well-established principle of statutory construction that requires the Court to presume that every word was intended and has force and effect and that no word is superfluous.[6] Pursuant to this canon of construction, "condition" cannot be cotermi-

---

[6] *See In re Drummond*, 17 B.R. 494, 497 n.2 (Bankr. E.D. Ark. 1981) ("There is a presumption that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provision were used.") (quoting 82 C.J.S. *Statutes* § 316, pp. 551–52); *see also Jasa v. Millard Pub. Sch. Dist. No. 17*, 206 F.3d 813, 815 (8th Cir. 2000) (rejecting statutory construction that rendered "the word 'facility' coterminous with 'school,' violating the principle of statutory construction that avoids creating mere surplusage"); *McDonald v. Bowen*, 468 S.W.2d 765, 771 (Ark. 1971) ("In statutory and constitutional construction, if it is possible to do so, we are bound to give meaning and effect to every word, phrase and clause, so that no word is rendered void, superfluous or insignificant or discarded as surplusage.").

Appellate Case: 16-1161    Page: 44    Date Filed: 03/31/2016 Entry ID: 4384037

nous with "provision," which ordinarily means "term." "Condition" must mean something else to avoid rendering "provision" surplusage.

Here, the most likely alternative, intended meaning of "condition" is "qualification." *See http://www.merriam-webster.com/dictionary/condition* (visited March 29, 2016) (generally defining "condition" as "provision," "qualification," "prerequisite," or "state of being"). Thus, properly construed, the statute reaches "any insurance policy . . . which contains any [qualification] or provision not in compliance" with the Insurance Code. *See* Ark. Code Ann. § 23-79-118. Because Graham's "invalidity" theory in fact challenges the "qualifications" of the Policies—the validity of the group to which the Policies provide coverage and the approval Appellees received to issue the Policies—Graham's challenge falls within the scope of the savings statute, pursuant to which the Policies "shall not be rendered invalid due to the noncomplying [qualification]." *Id.*

Although the District Court's decision is silent regarding the construction of the statute, this Court may affirm that decision on any ground supported by the record. *See Phillips*, 80 F.3d at 275. No court faced with the applicability of an analogous savings statute has

27

acknowledged the supposed distinction Graham draws between policy defects stated in the policy's terms and policy defects that arguably affect the policy as a whole. And in fact, the courts of at least three states—Georgia, Louisiana, and Oklahoma—have applied substantively identical savings statutes in their insurance codes to situations where insurers failed to file all or part of a policy with the appropriate regulatory agency, giving rise to alleged defects affecting the policy as a whole.

In *Hill v. Agri-Risk Services*, 827 P.2d 904 (Okla. Ct. App. 1992), an insurer failed to obtain the state insurance commissioner's approval of an insurance policy and an exclusionary endorsement before the policy was issued. *See id.* at 906–07. The insurer argued that Oklahoma's savings statute (which is almost identical to Arkansas's savings statute) rendered the endorsement valid notwithstanding the lack of prior approval. *Id.* at 906. The Oklahoma Court of Appeals agreed, finding that the "purpose behind the Oklahoma Insurance Code, and particularly [the savings statute], are of 'inclusionary' intent, i.e., as favoring the coverage where an insurer has attempted to avoid an otherwise statutorily mandated requirement for coverage." *Id.* To read the statute otherwise, the court held, would have required the court to find "the entire insurance

28

contact without force and effect," which would "clearly contradict the 'inclusionary' purpose" of the code.  *Id.*

Likewise, in *Security Life Insurance Co. v. Clark*, 494 S.E.2d 388 (1997), *rev'd in part sub nom.*, 509 S.E.2d 602 (1998), an insurer, in violation of Georgia law, failed to file an insurance policy with the Georgia Department of Insurance.  *See id.* at 599.  The Georgia Court of Appeals, relying upon a savings statute that is virtually identical to the one in this case, held that "although failing to file the policy is a misdemeanor, such failure does not void the policy."  *Id.* at 600.  The court did not alter any provision to bring the policy into compliance with Georgia's insurance law.  *See id.*

Another example is *Highlands Ins. Co. v. American Marine Corp.*, 607 F.2d 1101 (5th Cir. 1979).  The plaintiff argued that certain workman's compensation insurance policies were void because the insurer had failed to file parts of the policies with the proper state insurance officials.  *See id.* at 1104.  The defendant insurer argued that the mere failure to file could not void the policy completely because of Louisiana's savings statute, which is nearly identical to Arkansas's savings statute. *Id.*  The Fifth Circuit Court of Appeals agreed, finding that the plaintiff

29

had "cited no Louisiana case holding that the failure to file an insurance policy endorsement voids the policy" and had failed to "establish[] to our satisfaction the proposition that the failure to file rendered the enforcement ineffective." *Id.*

The results of these cases are not surprising. Where, as here, a state legislature has made clear that even policies containing illegal terms are deemed valid and enforceable (provided that such terms will be construed to render the policy legally compliant), it stands to reason that the legislature intended perfectly legal forms of coverage containing no such terms to be valid and enforceable too, notwithstanding other alleged defects in the issuance of the policies.

In all events, the foregoing cases demonstrate that the District Court's reliance on Ark. Code Ann. § 23-79-118 in dismissing the First Amended Class Action Complaint was proper. Graham's overly restrictive misconstruction of the savings statute should be rejected by this Court.

Even if Graham's construction of the § 23-79-118 were accurate, the Court still should reject his assertion that the Policies are void for two important reasons.

30

<u>First</u>, Graham's argument is based on the flawed premise: that absent § 23-79-118, an insurance policy that does not comply with the Arkansas Insurance Code is void and unenforceable. The public policy of Arkansas is found in its constitution and statutes, but Graham has failed to cite to any constitutional or statutory provision that would render the Policies void as against public policy. *See Vincent v. Prudential Ins. Brokerage*, 970 S.W.2d 215, 217 (Ark. 1998).

Moreover, Graham has failed to cite to any case in which an Arkansas court has declared an insurance policy invalid on the basis of Ark. Code Ann. §§ 23-86-101, 23-86-106, 23-86-102, or 23-79-109, as he has alleged here. *See, e.g.*, *Francis*, 249 S.W.3d at 833 (rejecting the plaintiff's claim because "[the plaintiff] cites us to no cases in which an Arkansas court has declared an insurance policy invalid on the basis of Ark. Code Ann. § 23-80-206(a)"). Nor would one expect to find such a case, because for nearly a century, the common law in Arkansas has been that voiding a contract such as an insurance policy is disfavored. *See Ferrell*, 251 S.W. at 380.

<u>Second</u>, the structure of the Insurance Code reveals that the Arkansas legislature did not intend for regulatory violations to render an

31

insurance policy void *ab initio* and unenforceable unless the Code specifically provides for that extreme remedy, which is not the case here. Under the framework enacted by the legislature, the Insurance Commissioner has the primary responsibility to enforce the provisions of the Code and to seek relief in the event those provisions are violated. *See* Ark. Code Ann. §§ 23-61-103, 23-61-110. Section 23-60-108 sets forth the general penalties for failing to comply with the Code:

> Unless a greater penalty is provided by another law of this state, a violation of a statute or regulation enforceable by the Insurance Commissioner is punishable (1) By the refusal, suspension, revocation or nonrenewal of a license or certificate of authority; and (2) A fine no greater than one thousand dollars ($1,000) per violation . . . .

Section 23-60-109 further provides that making certain false statements in relation to an insurance filing is a Class D felony.

These penalty provisions do not contain the "invalidity" penalty sought by Graham, nor does any other provision in the Code generally permit the voiding of a noncompliant insurance policy. Instead, the legislature included specific "invalidity" provisions on a section-by-section basis. For example, § 23-63-113 provides that "[a]ny provision in a health benefit plan that is executed, delivered, or renewed, or that otherwise contracts for provision of services in this state that is

32

contrary to this subchapter [which imposes certain specific mandates on insurance companies] shall be void to the extent of the conflict." Likewise, § 23-63-522(f)(2) grants the Insurance Commissioner the right, after notice and hearing, to "order the insurer to void any [contracts subject to the Insurance Holding Company Regulatory Act] and restore the status quo if such an action is in the best interest of the policyholder, creditors, or the public." Section 23-79-112, which regulates the contents of insurance policies, states that in the event a policyholder returns the policy to the insurance company within ten days of the delivery of the policy, the policy "shall be void from its inception, and the parties shall be in the same position as if no policy or contract had been issued." Another example can be found in § 23-79-144, which provides that "[a]ny insurance policy provision which would deny or restrict coverage to a minor child under such circumstances [as described in the section] shall be void as against public policy."

These *express* "invalidity" provisions, which appear throughout the Insurance Code, prove that the Arkansas legislature is perfectly capable of crafting an express penalty when it wants to, including for violations of Ark. Code Ann. §§ 23-86-101, 23-86-106, 23-86-102, and 23-79-109.

33

The absence of any such express "invalidity" provision in the statutory sections at issue here further establishes that the legislature did *not* intend for an insurance policy issued to an ineligible group or a policy that was not filed with or approved by the DOI to be rendered void and unenforceable. To the contrary, the absence of such an express provision demonstrates that the Arkansas legislature intended for the violations alleged by Graham to be dealt with in the normal course of the Insurance Commissioner's enforcement duties.[7]

This Court should decline to read into the Arkansas Insurance Code a new "invalidity" penalty where there is no evidence that the Arkansas legislature intended to include one. *See MacSteel Div. of Quanex v. Ark. Okla. Gas Corp.*, 210 S.W.3d 878, 883 (Ark. 2005) ("This

---

[7] *See also, e.g.*, *Chalfonte Condo. Apt. Ass'n v. QBE Ins. Corp.*, 526 F. Supp. 2d 1251, 1257 (S.D. Fla. 2007) (citing Florida analog of Ark. Code Ann. § 23-79-118 as evidence that "the legislature seems to suggest that in the absence of an express penalty, courts should assume that a policy provision is valid despite noncompliance with the Insurance Code"); *Southern Casualty Co. v. Hughes*, 263 P. 584, 586 (Ariz. 1928) (holding that failure of insurer to comply with Arizona Insurance Code by filing all copies of policy with corporation commission "does not invalidate the policy it actually issues, but subjects it to a penalty, leaving the policy *as issued* enforceable by the insured") (emphasis in original); *Quanta Specialty Lines Ins. Co. v. Inv'rs Capital Corp.*, No. 06-4624, 2008 WL 1910503, at *6 (S.D.N.Y. Apr. 30, 2008) ("Assuming, *arguendo,* that the

Appellate Case: 16-1161     Page: 52     Date Filed: 03/31/2016 Entry ID: 4384037

court will not read into a statute a provision that simply was not included by the General Assembly."); *Potter v. City of Tontitown*, 264 S.W.3d 473, 481 (Ark. 2007) (same); *see also McCullough Transfer Co. v. Virginia Sur. Co.*, 213 F.2d 440, 442 (6th Cir. 1954) ("There is no express provision in the foregoing sections of the Ohio General Code which states that a failure to comply with any of the provisions contained therein renders an insurance contract void.  If such was the intent of the Legislature it could easily have said so in express words.").  The legislature has the ultimate prerogative of supplying such a penalty, and in the absence of one, the premise of Graham's argument against the application of Ark. Code Ann. § 23-79-118 is fundamentally flawed.

### E. The Court Also Should Reject Graham's Reading of the Savings Statute as Applying Only When Invoked by an Insured.

Seeking to further limit the applicability of Ark. Code Ann. § 23-79-118, Graham claims that the statute should be read in light of the common law, which he says compels two conclusions: (1) the statute benefits insureds only, and not insurers, and (2) if insurers can ever invoke the statute for their benefit, they may only do so where the stat-

---

Policies constitute unlawful group policies, the Superintendent is tasked

Appellate Case: 16-1161     Page: 53     Date Filed: 03/31/2016 Entry ID: 4384037

utory violation can be cured by a revision of a policy provision. Appellant's Brief at 15–28.

Graham is wrong on both counts. Again, the text of § 23-79-118 does not include the limitations Graham reads into it. The text does not state that noncompliant policies are not rendered invalid "if, and only if, the insured chooses to enforce the policies." Nor does the text state that noncompliant policies are not rendered invalid "unless the insurer seeks to honor the policies, in which case the policies are void." Nor does the text state that noncompliant policies are valid "if, and only if, the insurer can cure any defect by revising the policies." The Arkansas legislature could have included such limitations. It chose not to do so. Accordingly, it would be inappropriate for this Court to make new law imposing such limitations. *See MacSteel Div.*, 210 S.W.3d at 883 ("This court will not read into a statute a provision that simply was not included by the General Assembly."); *Potter*, 264 S.W.3d at 481 (same).

Confounded by the plain text of the statute, Graham posits that various canons of statutory construction apply and require the Court to impose the limitations for which Graham advocates, including: (1) the

---

with redressing such a problem.").

Appellate Case: 16-1161    Page: 54    Date Filed: 03/31/2016 Entry ID: 4384037

statute should not be construed to overrule a principle of established common law, (2) a policy of insurance should be construed liberally in favor of the insured and strictly against the insurer, and (3) related statutory provisions "must be read in a harmonious manner, if possible." Appellant's Brief at 17–19.

None of these purported canons is applicable for several reasons. First, no canon of statutory construction even allows, much less requires, the Court to ignore the plain text of the statute, which here does not include the limitations Graham asks the Court to "read into" the statutory text. *See MacSteel Div.*, 210 S.W.3d at 883; *Potter*, 264 S.W.3d at 481.

Second, Graham fails to identify any ambiguity in the plain text of the statute that would require the Court to *construe* the language at all, much less an ambiguity that would suggest limitations that prohibit Appellees from invoking the statute under the circumstances here.

Third, even if the statute were ambiguous, Graham fails to identify any common law principle that the District Court "overruled" by applying the statute to hold that the Policies are valid and enforceable. As demonstrated above, the common law of Arkansas is, and long has been,

37

that voiding a contract such as an insurance policy is disfavored.  *See Ferrell*, 251 S.W. at 380.  The savings statute upholds and codifies this principle.  It does not "overrule" it.

Fourth, that a *policy* of insurance must be construed in favor of the insured is irrelevant here, where Graham asks the Court to construe a *statute,* not a policy.

 Fifth, even if Graham were correct that the Court must construe the statute in favor of the insured, the construction of the statute that does so is the same construction compelled by the plain language of the statute and the construction to which the District Court adhered:  upholding the validity of the Policies so that insureds who suffered a covered loss may enforce them to recover the benefits to which they are entitled.  The pro-insured construction of the statute—required by its plain language—is not to void coverage for which the insureds bargained.

Finally, it simply is not true, as Graham ominously warns, that the District Court's application of § 23-79-118 would render "countless provisions of Arkansas insurance law" "effectively meaningless."  Appellant's Brief at 19–20.  As explained above, the Arkansas Insurance

38

Commissioner has the ultimate authority and responsibility to regulate the insurance industry in Arkansas and enforce the applicable statutes and regulations, including the group and blanket insurance policy requirements. *See* Ark. Code Ann. §§ 23-61-103, 23-61-110. The legislature has given the Commissioner certain resources and statutory tools to do so, and he has the power to go to court to seek penalties from wrongdoers. *See, e.g.,* Ark. Code Ann. §§ 23-61-108, 23-61-110. That Graham believes such resources and tools are insufficient is irrelevant. Neither he nor this Court may overrule the Arkansas legislature. Any complaint Graham has with the framework established by the legislature should be presented to that body, not this Court.

Undeterred, Graham argues that "statutes similar to Ark. Code Ann. § 23-79-118 have been interpreted to only protect insureds and not insurers." Appellant's Brief at 20. But none of the cases Graham cites at pages 20–24 so holds. In fact, cases from other jurisdictions support the opposite conclusion.

For example, *Excelsior Insurance Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938 (Fla. 1979), does not support Graham's argument. There, the insured argued that an exclusion in the subject

policy effectively made the coverage illusory and, therefore, the policy was void. *Id.* at 941. Alternatively, the insured argued that the policy's exclusionary language violated Florida's insurance laws and that Fla. Stat. § 627.418(1)[8] required the court to strike it. *Id.*

The Florida Supreme Court rejected both arguments. It refused to find the policy "void *ab initio*," holding that such finding would "affront[] the rule which prefers that contracts be construed as valid." *Id.* at 941–42 (citations omitted). The court also found that the subject exclusionary language did not violate Florida's insurance laws, so § 627.418(1) did not apply. *See id.* at 942. *Excelsior* thus does not stand for the proposition that "statutes similar to Ark. Code Ann. § 23-79-118 have been construed to protect only insureds and not insurers," as the court refused to apply the statute to protect the insured.

---

[8] That statute provides:

> Any insurance policy . . . otherwise valid which contains any condition or provision not in compliance with the requirements of this code shall not be thereby rendered invalid . . . , but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy . . . been in full compliance with this code.

Appellate Case: 16-1161    Page: 58    Date Filed: 03/31/2016 Entry ID: 4384037

In *Hill v. State Farm Mutual Ins. Co.*, 375 S.E.2d 727 (Va. 1999), the court considered whether Va. Code Ann. § 38.2-318(A)[9] invalidates coverage that is broader than coverage required by Virginia's insurance laws. *See id.* at 729. The court answered the question in the negative, finding that "[t]here is no prohibition against an insurer offering broader coverage than the minimum prescribed by law." *Id.* The court explained:

> [Va. Code Ann. § 38.2-318(A)] take[s] effect only where an insurer seeks, by policy language, to narrow, avoid, vary or restrict the coverage the legislature has required. That is so because those superseding provisions are triggered expressly when policy terms are "inconsistent" with the terms prescribed by law. When the policy affords broader coverage than the law requires, no inconsistency exists; the policy provides all the coverage the statute demands, and more.

*Id.* Graham takes the first sentence of this quote out of context by suggesting the court held that the statute applies only in limited circumstances where the insurer seeks to avoid the minimum coverage required by the law. The court's holding, however, makes clear that Va.

---

[9] That statute provides:

> Any insurance policy or form containing any condition or provision that is not in compliance with this title shall be valid, but shall be construed and applied in accordance with the conditions and provisions required by this title.

41

Code Ann. § 38.2-318(A), like Ark. Code Ann. § 23-79-118, applies whenever the insurance policy at issue "is not in compliance with" applicable insurance regulations.

N.Y. Ins. Code § 3103(a)[10] also does not help Graham, and the cases Graham cites do not support the narrow interpretation he attempts to ascribe to it. *Posner v. U.S. Fidelity & Guaranty Co.*, 226 N.Y.S.2d 1011 (N.Y. Sup. Ct. 1962), and *Helfaer v. John Hancock Mut. Life Ins. Co.*, 274 N.Y.S.2d 494 (N.Y. Sup. Ct. 1966), stand for the unremarkable proposition that an insurer cannot avoid liability under an insurance policy by arguing that the policy it issued is illegal—which, of course, is not a position any Defendant has taken here. Neither case stands for the proposition that N.Y. Ins. Code § 3103(a) applies only when the insured

---

[10] That statute provides:

> Except as otherwise specifically provided in this chapter, any policy of insurance . . . delivered or issued for delivery in this state in violation of any of the provisions of this chapter shall be valid and binding upon the insurer issuing the same, but in all respects in which its provisions are in violation of the requirements or prohibitions of this chapter it shall be enforceable as if it conformed with such requirements or prohibitions.

42

asserts that the policy is void, a proposition unsupported by the plain text of the statute.

Graham also cites to *The Harrison Agency, Inc. v. Pacific Mutual Life Insurance Co.*, 703 F. Supp. 441 (W.D.N.C. 1989), in which the Western District of North Carolina refused to apply § 58-258(b) (the predecessor to North Carolina's savings statute, N.C. Gen Stat. § 58-50-15(b)[11]) in connection with an insurance broker's claim for unpaid commissions earned on sales of allegedly illegal insurance policies. *Id.* at 450. The court did not hold that § 58-50-15(b) existed only to protect innocent insureds, as urged by Graham. Rather, the court reasoned that § 58-50-15(b)'s predecessor statute "refers to enforcing the rights between the insured, the insurer, and the beneficiary," thus, its language "indicates that the North Carolina General Assembly was not concerned with protecting the pecuniary interests of brokers, agents, or promoters." *Id.*; *see also Stainback v. Investor's Consol. Ins. Co.*, 306

---

[11] That statute provides:

> A policy delivered or issued for delivery to any person in this State in violation of Articles 50 through 55 of this Chapter shall be held valid but shall be construed as provided in Articles 50 through 55 of this Chapter.

43

S.E.2d 532, 533-34 (N.C. App. 1983) (holding that an employer's group hospitalization insurance policy that violated a North Carolina insurance regulation was not void *ab initio* because "[v]iolation of the [subject requirements] does not automatically void the policy. Pursuant to Gen. Stat. § 58–258(b), a policy issued in violation of the statute 'shall be held valid.'").

Finally, *Latta v. Farmers County Mutual Fire Insurance Co.*, 313 S.E.2d 214 (N.C. App. 1984), merely stands for the proposition that "an insurer must return premiums where, without fault or fraud by the insured, no risk to the insurer ever attaches under the policy." *Id.* at 496. *Latta* does not apply here because risk *did* attach under the Policies, which have always been valid and enforceable under Arkansas law. And *Richardson v. Bank of America, N.A.*, 643 S.E.2d 410 (N.C. Ct. App. 2007), does not apply. That case dealt with Article 57 of North Carolina's Insurance Code, a statute unlike the ones at issue here, and no provision similar to § 23-79-118 applied. *See Petruzzo*, 2015 U.S. Dist. LEXIS 113489, at \*23–27 (explaining why North Carolina's savings statute applies and *Richardson* does not under the facts at issue here).

Appellate Case: 16-1161   Page: 62   Date Filed: 03/31/2016 Entry ID: 4384037

Unlike the inapposite cases on which Graham purports to rely, there are several decisions from other jurisdictions that correctly hold that statutes similar to § 23-79-118 apply even when invoked by insurers and even where alleged statutory violations cannot be cured. For example, Florida's courts have allowed insurers to rely on Florida's analogous statute, Fla. Stat. § 627.418(1), to enforce policies containing provisions that allegedly violated Florida's insurance laws. In *Lemy v. Direct General Finance Co.*, 885 F. Supp. 2d 1265 (M.D. Fla. 2012), the plaintiffs (like Graham here) alleged that their insurance policies violated numerous provisions of Florida's insurance laws, making them unauthorized and void. *Id.* at 1268. The court granted the insurer's motions to dismiss with prejudice, holding that "a [violative] policy typically remains valid under Section 627.418." *Id.* at 1269.[12]

The same is true. The Arkansas Insurance Code, including Ark. Code Ann. § 23-79-118, renders Graham's policies valid and enforceable

---

[12] Notably, the *Lemy* court found problematic the plaintiffs' decision to exclude from their proposed class those who had submitted claims, reasoning that "[i]f the policy is worthless because the insurers refuse to pay a claim, [the plaintiffs] forfeit that point because neither submitted a claim. If the policy is worthless because the coverage is duplicative, no one ever submits a claim, and the need to exclude each claimant [from

45

despite any alleged violations of the Insurance Code. *See El-Ad Enclave at Miramar Condo. Ass'n, Inc., v. Mt. Hawley Ins. Co.*, 752 F. Supp. 2d 1282, 1292 (S.D. Fla. 2010) (rejecting the insured's argument that the subject deductible provision was void and unenforceable despite its alleged noncompliance with Florida law because § 627.418 rendered the provision "valid").

Similarly, in the nearly identical action *Williams v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, the plaintiffs argued, just as Graham argues here, that Georgia's savings statute (O.C.G.A. § 33-34-12(b)) "only calls for the enforcement of an insurance policy when a condition or provision can be altered to make the policy conform to Georgia law." 2014 U.S. Dist. LEXIS 123040 (internal quotation omitted). The court disagreed, finding that the plaintiffs' reading of the statute was "inconsistent with how Georgia courts have interpreted [it]." *Id.*

As the foregoing demonstrates, Graham's argument that the Court should add conditions to Ark. Code Ann. § 23-79-118 fails. The Policies

---

the proposed class] betrays the policy's worth. Either way, [the plaintiffs'] allegation that the policy is worthless collapses." *Id.* at 1273–74.

Appellate Case: 16-1161    Page: 64    Date Filed: 03/31/2016 Entry ID: 4384037

are valid and enforceable as a matter of law, and the District Court's holding to that effect was correct.

### F. Merely Pleading the Alleged Statutory Violations at Issue Is Not Sufficient to Confer Standing.

Lacking any cognizable injury, Graham argues that he has standing because he has alleged statutory violations—that the alleged violations alone satisfy his requirement to plead an "injury in fact." Appellant's Brief at 42–44. Graham misstates the law.

As the U.S. Supreme Court explained, "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). However, the statute must confer a private right of action in the first instance. *See id.* If it does not, then a plaintiff lacks standing. *See id.*

Here, the Arkansas legislature has not granted private parties a cause of action to enforce the insurance statutes upon which Graham's claims rely. *See* Ark. Code Ann. §§ 23-86-101, 23-86-102, 23-86-106, 23-79-109. Instead, as explained above, the Insurance Code provides for enforcement only through the Arkansas Insurance Commissioner.

47

Consequently, Graham lacks standing to sue based on the alleged statutory violations alone.[13]

For this reason, the cases Graham cites on pages 42–44 of his brief are inapposite. In those cases, the underlying statute conferred a private right of action. *See, e.g.*, *E.M. v. N.Y. City Dep't of Educ.*, 758 F.3d 442, 451 (2d Cir. 2014) (noting that the statute at issue expressly provided for judicial review); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 375-76 (1982) (regarding claims brought under the Fair Housing Act, which confers a private right of action); *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 500 (8th Cir. 2014) (regarding claims brought under the Fair and Accurate Credit Transactions Act, which confers a private right of ac-

---

[13] This Court refused to find a private right of action in an analogous situation in which a plaintiff sued to enforce a rule promulgated by the Arkansas Insurance Commissioner to implement the Arkansas Trade Practices Act, which regulates trade practices in the insurance business. *See Design Prof'ls Ins. Co. v. Chicago Ins. Co.*, 454 F.3d 906, 911 (8th Cir. 2006). This Court held that no private right of action exists because the Act gives the Insurance Commissioner authority to establish rules of conduct and punish offenders, and because, according to this Court, the duties imposed by the applicable rule, which requires insurers to settle claims in the manner outlined by the rule, were owed to the state, not to the individual insureds. *Id.* at 911–12.

Appellate Case: 16-1161   Page: 66   Date Filed: 03/31/2016 Entry ID: 4384037

tion).[14]  That is not the case here.  Accordingly, Graham lacks standing based upon Appellees' alleged violations of the Arkansas Insurance Code.[15]

### G.  Pleading a Theory that Is Foreclosed By Statute Is Insufficient to Confer Standing.

Next, Graham argues that merely pleading a theory of injury that is directly at odds with the law is sufficient to confer standing.  Appellant's Brief at 45–46.  Graham is wrong.

A district court certainly is authorized to consider what rights a party has under state law to determine whether the legal conclusions underlying a claim of injury are correct.  A district court is not required

---

[14] In *Long Term Care Partners, LLC v. United States*, 516 F.3d 225 (4th Cir. 2008), the court declined to decide the standing issue, and instead found that judicial review was improper because there was no "final agency action" under the Administrative Procedure Act.  *Sun Life Assurance Co. of Canada v. Moran*, Nos. 08-629, 08-632, 2009 WL 2450443 (D. Ariz. Aug. 11, 2009), and *United States v. Gambler's Supply, Inc.*, 925 F. Supp. 658 (D.S.D. 1996), also have no application here, because the underlying contracts violated express provisions of law and no statute similar to Ark. Code Ann. § 23-79-11 applied.

[15] Graham's argument that economic damages are not required for purposes of Article III is a classic straw man, erected solely to be knocked down, as Appellees have never argued otherwise.  The problem here is that while Article III does not require economic damages, it does require "an invasion of a legally protected interest which is . . . concrete and particularized."  *Raines v. Byrd*, 521 U.S. 811, 819 (1997).

49

to accept erroneous legal conclusions at any stage, including on a motion to dismiss (whether under Rule 12(b)(1) or 12(b)(6)).  *See, e.g.*, *Ashley v. U.S. Dep't of Interior*, 408 F.3d 997, 1000 (8th Cir. 2005) (when reviewing a motion to dismiss for lack of standing, the court need not accept the plaintiffs' legal conclusions as true); *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003) (in reviewing a motion to dismiss under Rule 12(b)(1) or 12(b)(6), the court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations"); *DirecTV, Inc. v. Tolson*, 498 F. Supp. 2d 784, 786 (E.D.N.C. 2007) ("[N]either rule requires the court to accept plaintiffs' legal conclusions.").  Thus, the District Court was entitled to reject Graham's allegations that his Policies were "unlawful," "illegal," and "void."

## III. The Court Should Affirm the District Court's Dismissal of Each of Graham's Causes of Action Under Rule 12(b)(6) For Independent Reasons.

### A. The District Court Did Not Err in Dismissing the Entirety of Graham's Unjust Enrichment, Conversion, and Civil Conspiracy Claims.

Graham argues that the District Court erred in dismissing the entirety of his unjust-enrichment, conversion, and civil conspiracy claims because those claims purportedly also are based on allegations separate

50

from his allegation that the Policies were void. Appellant's Brief at 29–30. Specifically, he asserts that the First Amended Class Action Complaint also alleges that the terms of coverage were restrictive and contradictory, Appellees failed to disclose that 80% of the premiums paid by Graham were not used to pay for insurance coverage, but went to cover marketing expenses and profits, and Appellees failed to disclose that they had a practice of not paying legitimate claims. *See id.*

Graham is wrong. The District Court did not err in dismissing his unjust enrichment, conversion and civil conspiracy claims in their entirety for several reasons.

First, as to Graham's conversion claim, Appellees moved to dismiss on grounds that Graham failed to allege facts sufficient to show that Appellees wrongfully committed an act of dominion over Graham's property inconsistent with Graham's rights. (J.A. 289–90). Graham offered no response (*see* J.A. 346–67), conceding the issue. *Watson v. AFCO Steel, LLC*, No. 4:09-CV-660-WRW, 2010 WL 4269235, at *1 (E.D. Ark. Oct. 28, 2010). He cannot attempt to assert a response for the first time now, on appeal. *Wright v. Newman,* 735 F.2d 1073, 1076 (8th Cir.

51

1984) ("As a general rule, we do not consider arguments or theories on appeal that were not advanced in the proceedings below.").

Even if the Court were inclined to consider a response, the District Court did not err in dismissing Graham's conversion claim in its entirety because, omitting "allegations" that merely recite the elements of a conversion claim, *see* FAC ¶ 134 (J.A. 209), the First Amended Class Action Complaint alleges only that sometime after "2001 or 2002" Graham "agreed to pay premiums," that his payments "subsequently appeared as charges/debits on his credit card statements," and that he knowingly continued to pay the fees without complaint for years. FAC ¶¶ 47, 39 (J.A. 192). Even if true, these facts do not show that Appellees "wrongfully commit[ted] a distinct act of dominium over the property of [Graham's] inconsistent with [Graham's] rights." *Evans v. JP Morgan Chase Bank, N.A.*, No. 12-1038, 2014 WL 359226, at *7 (W.D. Ark. Feb. 3, 2014). To the contrary, these facts demonstrate that Appellees acquired possession of Graham's property in an *authorized* manner and that Graham ratified the fees by voluntarily continuing to pay them for years. *See, e.g.*, *Gaunt v. La. Citizens Prop. Ins. Corp.*, 512 F. Supp. 2d 493, 498–99 (E.D. La. 2007) (holding that the plaintiffs ratified the defend-

52

ants' alleged overcharging of premiums by renewing their insurance policies and paying the allegedly excessive rates).

Second, as to Graham's unjust enrichment claim, as explained above, even *if* the Policy was issued to an invalid blanket group, the Policy remains valid and enforceable. Ark. Code Ann. § 23-79-118. And "[u]nder Arkansas law, the doctrine of unjust enrichment has no application when an express, written contract exists." *Peace v. Bank of Am., N.A.*, No. 10-58, 2010 WL 996005, at *3 (E.D. Ark. Mar. 17, 2010); *see also Varner v. Peterson Farms*, 371 F.3d 1011, 1018 (8th Cir. 2004) ("[U]nder Arkansas law, the doctrine of unjust enrichment does not apply when there is a valid, legal, and binding contract."); *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1086 (E.D. Ark. 2013) (same); *Adkinson v. Kilgore*, 970 S.W.2d 327, 331 (Ark. Ct. App. 1998) ("[W]here there is an express contract in existence, the law will not imply a quasi-contract. The law never accommodates a party with an implied contract where there has been a specific one on the same subject matter." (citation omitted)). Thus, the District Court did not err in dismissing Graham's unjust enrichment claim in its entirety. *See Peace*, 2010 WL 996005, at *3 (dismissing the plaintiff's claim that the defendant was

53

"unjustly enriched when it increased the minimum periodic payments for the plaintiff's home equity line of credit mortgage loans" because "the existence of an actual contract bars recovery in quasi-contract for unjust enrichment").

Finally, as to all three of Graham's claims—unjust enrichment, conversion and civil conspiracy—the District Court correctly held that the "crux of Plaintiff's theory is that the policy at issue was void and worthless because it violated Arkansas law defining groups to which policies may be issued." (J.A. 641). Graham did not allege separate "misrepresentation and omission" allegations in support of such claims—the claims each depend upon the same central allegations and specifically the allegation that because the Policy is illegal, it is void *ab initio*. FAC ¶¶ 123, 126–27 (J.A. 208) (alleging that Appellees were unjustly enriched by retaining payments for coverage purportedly "illegal under Arkansas law in that Plaintiff and the Class Members were not members of a legal 'blanket group'"); FAC ¶ 134 (J.A. 209) (alleging that Appellees "appropriated the Plaintiffs' [sic] personal property for their own use by intentionally exercising dominion and control over the amount of the illegal unauthorized premiums by debiting Plaintiffs' [sic]

54

credit card or bank accounts and retaining those unauthorized amounts"); FAC ¶ 139–41 (J.A. 210) (alleging that Appellees conspired "to create the illusion of a valid group" and in failing to disclose that the Policy has "no value").

In any event, Graham cannot satisfy his burden of pleading a claim that survives Appellees' motions to dismiss by alleging that Appellees failed to disclose that 80% of the premiums did not go to pay for insurance coverage because Graham does not identify any legal authority, whether by statute or common law, that required disclosure of how program members' fees were allocated. Indeed, courts have rejected similar efforts to mandate disclosures about the allocation of amounts charged for insurance. *See, e.g.*, *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1129, 1132 (2010) (finding "no common law authority" or "principled basis" for imposing a duty on insurers to disclose "information pertaining to the price that the insurer is willing to accept for coverage"); *Cal Serv Station & Auto Repaid Ass'n v. Am. Home Assurance Co.*, 62 Cal. App. 4th 1166, 1173-74 (1998) (rejecting claims predicated on purported duty to disclose how premiums were calculated).

55

## B.   This Court Should Affirm the Dismissal of the Breach of Contract Claim Under Rule 12(b)(6).

To state a claim for breach of contract under Arkansas law, Graham must allege four elements: "(1) the existence of a valid and enforceable contract; (2) an obligation on the part of the defendant; (3) a breach of that obligation; and (4) damages resulting from the breach." *Marks v. Powell*, 162 B.R. 820, 827 (E.D. Ark. 1993); *see also Ark. Dep't of Envtl. Quality v. Brighton Corp.*, 102 S.W.3d 458, 464 (Ark. 2003). Graham's purported breach-of-contract claim is missing elements (2), (3), and (4).

In a set of wholly conclusory statements, Graham alleges in his complaint that the Appellees cancelled the Program and thereby breached the Policies, entitling Graham to a "full refund of all premiums paid plus interest." FAC ¶¶ 115–118 (J.A. 207). Graham's claim—presumably pled in the alternative to his claim that the Policies are void *ab initio*—is based entirely on a November 14, 2014 letter that "the Defendants" mailed to "all victims of the HealthExtras Scheme, nationwide, including residents to [sic] Arkansas" advising them that the insurance coverage under the Program is discontinued as of December 31, 2014. FAC ¶¶ 50–51 (J.A. 192–93).

Appellate Case: 16-1161     Page: 74     Date Filed: 03/31/2016 Entry ID: 4384037

Graham's allegation regarding the Program's cancellation is insufficient to support his breach-of-contract claim because he fails to allege that any Appellee had a contractual obligation to continue coverage indefinitely, much less reference any contractual provision establishing any such obligation. The Policies contain no continuing coverage provisions. (*See* J.A. 324–339). To the contrary, the insurers had an explicit contractual right to cancel the Policy, and they exercised that right. (*See* J.A. 339). Absent a contractual obligation to continue coverage under the Program, the termination of such coverage cannot support a claim for breach.

Moreover, even if Graham had properly and plausibly alleged a contractual obligation to continue his coverage indefinitely, his claim remains implausible because the First Amended Class Action Complaint does not support an inference that Graham suffered damages resulting from termination of his coverage. Graham's bare allegation that he has been "harmed" by the defendants' purported breach, FAC ¶ 117 (J.A. 207), is insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Appellate Case: 16-1161    Page: 75    Date Filed: 03/31/2016 Entry ID: 4384037

## IV. The District Court Properly Dismissed Graham's Unjust Enrichment, Conversion, and Civil Conspiracy Claims As Time-Barred.

The District Court's October 1, 2015 Order dismissed Graham's unjust-enrichment, conversion, and civil conspiracy claims for the independent reason that they are time-barred. (J.A. 642). The District Court applied a five-year statute of limitations based on Ark. Code Ann. § 23-79-202(a), which covers suits by insureds against insurers for recovery of claims or losses "arising under" insurance policies. (J.A. 642 (citing *Shelter Mut. Ins. Co. v. Nash*, 184 S.W.3d 425, 428 (2004)). To the extent that Graham's unjust-enrichment, conversion, and civil conspiracy claims do not "arise[] under" the Policy, but are based on the allegation that the Policy is illegal and therefore void and unenforceable (J.A. 207–11), the applicable statute of limitations is actually three years.[16]

---

[16] *See* Ark. Code Ann. § 16-56-105; *Willis v. Nationwide Mut. Ins. Co.*, No. 14-4024, 2014 U.S. Dist. LEXIS 138487, at *14 (W.D. Ark. Sept. 30, 2014) ("Unjust enrichment carries a three-year statute of limitations."); *Bragg v. Morgan*, No. 99-1135, 2000 Ark. App. LEXIS 608, at *3 (Ark. Ct. App. Sept. 27, 2000) ("The statute of limitations for . . . conversion is three years."); *see also Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) ("[C]ivil conspiracy—which is not a separate tort and must be based on the underlying tortuous activity—borrows its statute of limitations from the [underlying tort] cause of action.").

58

Either way, there is no dispute in this case that Graham failed to file his unjust-enrichment, conversion, and civil conspiracy claims within the period prescribed by Arkansas law. Absent fraudulent concealment, the three-year (or five-year) statute of limitations begins to run when the alleged wrong occurred, not when it was discovered. *Rice v. Ragsdale*, 292 S.W.3d 856, 860–61 (Ark. 2009). As the District Court concluded, the face of the First Amended Class Action Complaint shows that Graham's claims accrued when he first enrolled in the Program and began paying premiums, which was no later than 2002. (J.A. 642). Because Graham brought this suit long after the limitations period elapsed in 2005 or 2007, his claims are time-barred.

Graham, however, alleges that the statute of limitations was tolled due to fraudulent concealment. Under Arkansas law, if it is clear from the face of the complaint that a claim was not timely filed, as in this case, "the burden shifts *to the plaintiff* to prove by a preponderance of the evidence that the statute of limitations is tolled." *Reed v. Guard*, 285 S.W.3d 662, 664 (Ark. 2008) (emphasis added). Fraudulent concealment tolls the statute of limitations only when the defendants "have committed a *positive* act of fraud, something so furtively planned and secretly

59

executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself." *Riddle v. Udouj*, 267 S.W.3d 586, 593 (Ark. 2007) (emphasis added).

In other words, nondisclosure alone, or a continuation of that nondisclosure, does not constitute fraudulent concealment. *Self v. Addison Prods. Co.*, No. 99-826, 2000 Ark. App. LEXIS, at *3 (Ark. Ct. App. Mar. 22, 2000) (citing *Adams v. Arthur*, 969 S.W.2d 598, 603 (Ark. 1998) ("No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar.")). And even if fraudulent concealment is demonstrated, the aggrieved party also must prove that the wrongful conduct could not have been detected by the exercise of "reasonable diligence." *Delanno, Inc. v. Peace*, 237 S.W.3d 81, 85 (Ark. 2006).

Thus, in order to advance his claims, Graham bears the burden of alleging sufficient facts to prove that Appellees "committed a positive act of fraud" that was "secretly executed" so as to conceal the alleged wrongful conduct, and that by "reasonable diligence" he could not have detected or known of the wrongful conduct. *Riddle*, 267 S.W.3d at 593.

60

As Appellees demonstrated to the District Court, Graham failed to satisfy his burden. (*See* J.A. 313–18). First, Graham's allegations regarding fraudulent concealment show nothing more than Appellees' alleged nondisclosures—the allegations do not include a "positive" act of fraud by Appellees. Graham alleges that he had "no mechanism for learning . . . that the purported insurance coverage . . . was illusory, and worthless." FAC ¶ 71 (J.A. 199). He also alleges that that Appellees "[n]ever disclosed that the purported disability insurance coverage was illusory," FAC ¶ 55 (J.A. 194), that he "did not know the purported disability insurance coverage [he was] purchasing was illegal, illusory and worthless," FAC ¶ 72 (J.A. 199), and that Appellees failed to "fully disclos[e]" to him "that the policies being sold to [him] did not and could not comply with Arkansas law." FAC ¶ 109 (J.A. 206). Such allegations are conclusions, not facts.

Moreover, none of these allegations, nor any other allegation in Graham's complaint, goes beyond his lack of knowledge or Appellees' mere nondisclosures. Graham wholly fails to allege that Appellees made an affirmative statement that was fraudulent or misrepresented a material fact in order to conceal the alleged wrongdoing. Absent such

61

required allegations, Graham has not properly pleaded fraudulent concealment.

Second, even if Graham had alleged a "positive act of fraud" (which he has not), his fraudulent-concealment argument would still fail because the allegations in the First Amended Class Action Complaint establish that he could have detected the alleged wrongful conduct through the exercise of reasonable diligence.  Indeed, Graham admits in the complaint that he and the putative class members received a "coverage description" that disclosed "some limitations on coverage under the policy," which he alleges were "extremely harsh, restrictive and confusing."  FAC ¶¶ 55, 75 (J.A. 194, 200).  Virginia Surety attached the Description of Coverage, which Graham received in October 2004, as Exhibit B to its motion to dismiss.  (J.A. 324–339).

The information included in the Description of Coverage—and Graham's recognition that the limitations on coverage were harsh, restrictive, and confusing—are sufficient under Arkansas law to put Graham on inquiry notice about at least one of the key issues in this case—the scope of his coverage.  If he is to be believed that the harsh, restrictive and confusing terms of his coverage give rise to a cause of

Appellate Case: 16-1161     Page: 80     Date Filed: 03/31/2016 Entry ID: 4384037

action, the receipt of the Description of Coverage should have spurred Graham to conduct a reasonable investigation of the Program, the Policy language, and the insurers. But based on the allegations on the face of the complaint, Graham completely failed to conduct any such inquiry. Graham could have detected the alleged wrongful conduct through the exercise of reasonable diligence, but failed to do so.

Graham argues that this Court should not even consider the 2004 Description of Coverage because it was not attached to his complaint. Appellant's Brief at 32–33. But it is proper for this Court to do so for two reasons: First, the First Amended Class Action Complaint incorporates the coverage description by reference. FAC ¶ 55 (J.A. 194) (referring to the "coverage description"); *see also Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (holding that documents incorporated into the pleadings by reference may be examined on a motion to dismiss). Second, because this action is, at least in part, a contract action, a court may examine the contract documents without converting the motions to dismiss into motions for summary judgment. *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003)

63

("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss.")

The Court should also reject Graham's argument that the 2004 Description of Coverage is not applicable to this case. Graham does not argue that the coverage description relates to a different program, just a different disability policy issued by a different insurer. Appellant's Brief at 33. Moreover, on its face, the coverage description *does* refer to the emergency accident and sickness medical expense benefit portion of the Program provided to Graham by Virginia Surety. (*See* J.A. 327, 335–38.) At a minimum, therefore, the coverage description was sufficient to put Graham on notice of the facts supporting his claims against Virginia Surety in this lawsuit.

But any reasonable inquiry into those facts would have also revealed the relevant facts that support his claims against the other Appellees as well, since Graham has made effectively the same allegations against each Appellee and further alleges that all of Appellees engaged in a joint enterprise and conspiracy to market the Program and issue the policies that make up the Program in an unlawful manner. FAC ¶¶ 109–12 (J.A. 206).

64

Contrary to Graham's assertions in his brief, it is of no moment that the 2014 Description of Coverage did not disclose *every* limitation on coverage in the policy or specifically address the validity of the Program or Policies.  Appellant's Brief at 36.  This level of detail is not required by Arkansas law.  Indeed, on similar facts, courts applying Arkansas law have held that an insurer's alleged fraud in the sale of insurance policies does not toll the statute of limitations where the insured could have detected the fraud by reading the plan documents he was provided.

In *Kirby v. United American Insurance Co.*, No. 08-388, 2010 U.S. Dist. LEXIS 24580 (E.D. Ark. Jan. 22, 2010), *report and recommendation adopted by* 2010 U.S. Dist. LEXIS 24595 (E.D. Ark. Mar. 15, 2010), the court rejected the insured's argument that the insurer's misrepresentations about the scope and cost of coverage tolled the statute of limitations. *Id.* at *14–16.  The court found that the "unambiguous information in the written [policies and program] materials would have placed a reasonable person on notice that [the defendant-insurer's] representations were false or misleading."  *Id.*; *see also Bice v. United Am. Ins. Co.*, No. 09-6051, 2010 WL 2691690, at *6 (W.D. Ark. Jul. 6, 2010) ("[T]he written contracts clearly contradicted the notion that Plaintiffs had purchased

65

eight-twenty major medical insurance.") (dismissing claims as time-barred). Thus, at the latest, Plaintiff's claims accrued in 2004 and expired in 2007 or 2009, when the applicable statutes of limitations had run.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should affirm the District Court's dismissal of Graham's First Amended Class Action Complaint.

66

Respectfully submitted,
on behalf of all Appellees:

*/s/ Gary D. Marts, Jr.*

Edwin L. Lowther, Jr.
Gary D. Marts, Jr.
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
Phone: (501) 371-0808
Fax: (501) 376-9442
elowther@wlj.com
gmarts@wlj.com

J. David Brown
Tom Van Arsdel
Stephen R. Clarke
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Phone: (214) 745-5400
Fax: (214) 745-5390
dbrown@winstead.com
tvanarsdel@winstead.com
sclarke@winstead.com

*Attorneys for Defendant-Appellee*
*Stonebridge Life Insurance Company*

67

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Eighth Circuit Rule 28A(c), the undersigned certifies that this brief complies with the applicable type-volume limitations and that, exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), this brief contains 13,942 words. This certificate was prepared in reliance on the word count of the word processing system (Microsoft Word 2010) used to prepare this brief. The undersigned further certifies that the electronic version of this brief has been scanned for viruses and is virus-free.

*/s/ Gary D. Marts, Jr.*
Gary D. Marts, Jr.

68

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve participants in the case who are registered CM/ECF users.

I further certify that the following participants in this case are not CM/ECF users and that I have served a copy of the foregoing upon them via United States Mail:

Mr. Denny Paul Petty
PAUL PETTY LAW FIRM
411 W. Arch
Searcy, AR 72143-0000

Ms. Kelly Librera
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166

/s/ Gary D. Marts, Jr.
Gary D. Marts, Jr.

69